591 A.2d 734

**COMMONWEALTH of Pennsylvania**

v.

**Kenneth INGRAM, Appellant.**

Superior Court of Pennsylvania.

Submitted March 20, 1991.

Filed May 22, 1991.

562

Kalvin Kahn, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CIRILLO, OLSZEWSKI and CERCONE, JJ.

OLSZEWSKI, Judge:

This is an appeal from a judgment of sentence rendered in the Court of Common Pleas of Philadelphia County, following a jury trial wherein appellant was found guilty of possessing an instrument of crime, aggravated assault, and recklessly endangering another person.[1] Appellant alleges eleven instances of error by the trial court and sixteen claims of ineffective assistance of trial counsel. The facts, as stated by the trial court, are as follows:

> This case involves open gunfire into a nightclub injuring an employee, John Anderson. Mr. Anderson was employed as the doorman at the Boyle's Pacific Tavern located at 2222 Pacific Street in the City of Philadelphia. On August 1, 1987, at approximately 12:00 midnight Mr. Anderson was required to fulfill his duties as the "bouncer" by turning away a group of approximately four men, one of which was the defendant, for not meeting the club's appropriate dress code. Mr. Anderson testified that the "gentlemen" protested by beginning a "tussle" that ended in a fight. (N.T. 12/13/88, p. 27). Approximately five to ten minutes after the fight had dissipated, Mr. Anderson heard a shot, the glass of the window shattered and he was hit in the arm. Mr. Anderson testified that the shot originated from a parking lot

---

1. Following trial counsel's filing of post-trial motions, appellant filed, *pro se,* a motion in arrest of judgment and/or new trial and a petition for withdrawal of counsel and appointment of new counsel. The petition for appointment of new counsel was heard and granted, at which time new counsel was appointed. Thereafter, a second new counsel was appointed, who filed and argued post-trial motions, which were held under advisement. Following the filing of supplemental amended post-trial motions, all of appellant's motions were denied and appellant was sentenced to a total incarceration period of five-to-ten years.

angled across the street from the club. (N.T. 12/13/88, p. 28). Mr. Anderson identified the defendant as a regular at the club, and stated that the defendant was present on August 1, 1987. However, Mr. Anderson was unable to identify the defendant as the gunman. (N.T. 12/13/88, p. 59).

(Trial court opinion at 20.)

Several police officers testified concerning appellant's identification and apprehension. Officer Murphy, an officer at the scene, testified that on the night in question, he observed a male walking toward the parking lot with what appeared to be a rifle or a shotgun. (N.T. 12/13/88, p. 71.) The officer testified that he witnessed the male make a "pump" action, which appeared to be loading the gun. The male then disappeared behind a garbage dumpster, at which time a shotgun fire was heard. (N.T. 12/13/88, p. 73.) The officer then testified that he observed the male running toward him and recognized the male as appellant. Officer Murphy was able to recognize appellant because of his routine patrol of the area over a four-year period. Additionally, the officer testified that he had once been involved in transporting appellant to the hospital from his mother's house. (N.T. 12/13/88, pp. 89–90.) The officer followed appellant through a fence, but was unsuccessful in apprehending him. (N.T. 12/13/88, p. 74–75.)

Officer Andrew Smith testified that he searched the area and recovered a used shotgun shell near the garbage dumpster, as well as a shotgun containing two shells. The shotgun was in two separate pieces under weeds and debris near a hole in the fence where appellant had escaped. (N.T. 12/14/88, pp. 4–12.)

Officer Thomas Ryan was the arresting officer and testified that he received a warrant for appellant's arrest on August 1, 1987. He testified that he was unsuccessful in finding appellant until February 12, 1988, when he observed appellant walking in a Philadelphia neighborhood. (N.T. 12/14/88, p. 26.)

■ Appellant first alleges that the trial court erred in failing to grant his petition to dismiss pursuant to Pa. R.Crim.P. 1100. Rule 1100 was amended on December 31, 1987. Under the former version of Rule 1100, a defendant was required to be brought to trial within 180 days from the date on which the complaint is filed. The amended version increases this time period to 365 days. The record indicates that the complaint was filed against appellant on August 1, 1987; therefore, the original 180-day period for commencement of trial ended on January 28, 1988. Appellant was apprehended on February 12, 1988. Because the original 180-day period allowing for commencement of trial had not yet expired when Rule 1100 was amended, the amended version of Rule 1100 applies to the case *sub judice*. *See Commonwealth v. Palmer*, 384 Pa.Super. 379, 558 A.2d 882 (1989). Therefore, the Commonwealth had 365 days to bring appellant to trial from the time the complaint was filed on August 1, 1987, excluding any period of time allowable by Rule 1100(c).

■ Rule 1100(c)(1) excludes the period of time between the filing of the written complaint and the defendant's arrest from calculation of the trial commencement period, provided that the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence. Appellant argues that the Commonwealth failed to exercise due diligence in attempting to apprehend him. We disagree. In determining whether the police acted with due diligence, a balancing process must be employed where the court, using a common sense approach, examines the activities of the police and balances this against the interest of the accused in receiving a fair trial. *Commonwealth v. Cruz*, 362 Pa.Super. 282, 524 A.2d 507, 509 (1987), *citing*, *Commonwealth v. Branch*, 337 Pa.Super. 22, 486 A.2d 460 (1984). The actions must be judged by what was done, not by what was not done. In addition, the efforts need only be reasonable; lack of due diligence should not be found simply because other options were available or, in hindsight, would have been more

productive. *Commonwealth v. Cruz, supra,* 524 A.2d at 509, *citing, Commonwealth v. Kaminski,* 349 Pa.Super. 78, 502 A.2d 1281 (1985). In the present case, the trial court adequately set forth the Commonwealth's activities in attempting to apprehend appellant:

Officer Thomas Augustine testified [at the suppression hearing on December 7, 1988] that he in the company of several police officers attempted to serve the arrest warrant at the defendant's last known address. (N.T. 12/7/88, p. 10). Based on the information received from Mrs. Ingram, the defendant's mother, the police were able to form a reasonable belief that the defendant had left town, and, therefore, had no reason to return to the address. (N.T. 12/7/88, p. 12). Officer Augustine then entered a wanted message into the PCIC, but not the NCIC because it was the officer's belief that the defendant could not be extradited. (N.T. 12/7/88, pp. 13–16).

Officer Thomas Ryan testified that apprehension activities continued by himself and members of the police department in the neighborhood where the defendant was well known to them. Officer Ryan stated that on a daily basis during routine patrol, he and his partner haunted the spots where they had seen the defendant on numerous occasions in the past. (N.T. 12/7/88, p. 17). The continuing search ended in successful apprehension of the defendant by Officer Ryan on February 12, 1988, 196 days after the formal complaint was lodged. (N.T. 12/7/88, p. 17).

(Trial court opinion at pp. 28–29.)

We agree with the trial court, that this above police activity constitutes reasonable effort and due diligence in attempting to apprehend appellant. We will not, by judicial hindsight, criticize the police activity in this instance. Therefore, the 196 days between the time the complaint was filed on August 1, 1987, and the time appellant was arrested on February 12, 1988, is excluded from the computation of the period for trial commencement under Rule 1100. Recalculating the period, the Commonwealth had 365 days from

February 12, 1988, the date of appellant's arrest, to bring appellant to trial. As appellant's trial commenced in December of 1988, there was no Rule 1100 violation.[2]

■ Appellant next alleges that he was denied his Sixth Amendment right to counsel by virtue of the trial court's failure to grant appellant a continuance to hire private counsel after he expressed his general dissatisfaction with court-appointed counsel at the beginning of the *voir dire*. Pa.R.Crim.P. 316(c)(ii) states, "A motion for change of counsel by a defendant to whom counsel has been assigned, shall not be granted except for substantial reasons." A review of the record indicates that appellant, in the presence of the venire panel, expressed his dissatisfaction with trial counsel; however, appellant merely stated that he was not satisfied with counsel and was unable to specify counsel's deficiencies. (N.T. 12/7/88, pp. 27–28.) Thus, it appears from the record that appellant was unable to provide substantial reasons for the assignment of new counsel.

■ Additionally, whether to grant a defendant's petition to replace court-appointed counsel is a decision which is left to the sound discretion of the trial court. *Commonwealth v. Neal*, 387 Pa.Super. 165, 563 A.2d 1236, 1241 (1989) [citations omitted]. As a general rule, however, a defendant must show irreconcilable differences between himself and his court-appointed counsel before a trial court will be reversed for abuse of discretion in refusing to appoint new counsel. *Commonwealth v. Neal, supra,* 563 A.2d at 1241. The "right to counsel does not give [a defendant] the right 'to delay the trial indefinitely because he is dissatisfied with competent counsel appointed by the court, ready and willing to represent him.'" *Commonwealth v. Neal, supra,* at 1241, *citing, Commonwealth v.*

2. As we find no Rule 1100 violation, we need not review the trial court's holding that appellant waived the alleged Rule 1100 violation. Appellant's argument that the Commonwealth failed to file a written petition to extend the Rule 1100 run date is likewise redundant, as there is no such requirement under the amended version of Rule 1100, nor was such an extension necessary because Rule 1100 was not violated.

*Stiles*, 229 Pa.Super. 411, 417, 323 A.2d 841, 844 (1974). In its opinion, the trial court states that appellant's trial counsel "clearly displayed spirited and conscientious preparation to defend this difficult defendant." (Trial court opinion at 39.) Therefore, as appellant failed to specify substantial reasons for the appointment of new counsel, we cannot find that the trial court abused its discretion in denying appellant a continuance in order to employ private counsel.[3]

Appellant next contends the trial court erred in denying the defense's challenge for cause of a jury panel member who expressed his opposition to the use of weapons to commit crimes. When questioned about his ability to be an impartial juror and apply the law to the facts of the case, the juror responded affirmatively.

The test for determining whether a prospective juror should be disqualified is whether he or she is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor, *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973). It must be determined whether any biases or prejudices can be put aside on proper instruction of the court, *Commonwealth v. Drew*, 500 Pa. 585, 459 A.2d 318 (1983). A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct and answers to questions, *Commonwealth v. Colon*, 223 Pa.Super. 202, 299 A.2d 326 (1972). The decision on whether to disqualify is

---

**3.** Appellant's allegation of trial court error in failing to discharge the venire panel or render curative instructions is likewise without merit. The record indicates that trial counsel amply evaluated each prospective juror's ability to be impartial and render a fair verdict based on the evidence. The four jurors that were actually selected from the panel were thus adequately examined in this respect. Additionally, appellant does not even attempt to argue how any of these four jurors were rendered tainted as a result of appellant's own remarks concerning his dissatisfaction with trial counsel.

within the sound discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion, *Commonwealth v. Black*, 474 Pa. 47, 376 A.2d 627 (1977).

*Commonwealth v. Akers*, 392 Pa.Super. 170, 572 A.2d 746 (1990).

In the present case, the trial court observed the venire member's demeanor, heard his answers, and was in an overall better position to assess his credibility. Therefore, we are unable to find an an abuse of discretion by the trial judge.[4]

■ Next, appellant alleges trial court error in denying appellant's motion for a mistrial following the in-court identification of appellant by the complainant. Appellant contends that the Commonwealth had represented to appellant's trial counsel that no in-court identification of appellant would be made through the complainant and that such identification was prejudicial, as it placed appellant at the scene of the crime within minutes of its occurrence. Appellant, in essence, argues that such testimony should not have been admitted, as it was damaging to appellant's defense. We do not agree that appellant was unfairly prejudiced by this identification. The record indicates that the complainant did not identify appellant as the person who shot him, but only testified that he had seen appellant at the club on a regular basis and that he was present and involved in the "tussle" that occurred just prior to the shooting in question. (N.T. 12/13/88, p. 32.) We believe, as did the trial court, that this testimony presents an issue of credibility to be determined by a jury. *See, Commonwealth v. Nelson*, 337 Pa.Super. 292, 486 A.2d 1340 (1984). Any inferences as to the identity of the shooter that the jury may have drawn

---

4. We must also note that the venire member in question never actually served on the jury at appellant's trial, as he was excluded by a peremptory challenge. Therefore, appellant's claim of trial court error is moot, as appellant has not demonstrated that he was denied a fair trial by virtue of having an impartial or incompetent juror empaneled. *See Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).

from the complainant's testimony are not to be second-guessed by an appellate tribunal. *See Commonwealth v. Nelson,* 486 A.2d at 1344; *Commonwealth v. Kloiber,* 378 Pa. 412, 425, 106 A.2d 820, 827 (1954) ("... a weak identification, together with other evidence in the case, may be sufficient to convince a jury of the defendant's guilt beyond a reasonable doubt—the credibility of the witnesses and the weight to be given their identification is, under proper instructions from the Court, exclusively for the jury." [citations omitted] ). Therefore, appellant's motion for a mistrial was baseless and the trial court did not err in denying such motion.

As stated above, Officer Murphy, the police officer at the scene of the shooting, also gave identification testimony incriminating appellant. Appellant argues that the verdict was against the weight of the evidence, as this identification was based on mistake and therefore incredible. In evaluating a claim that the verdict is against the weight of the evidence, this Court, in *Commonwealth v. McLean,* 396 Pa.Super. 23, 578 A.2d 4, 6 (1990), recently stated:

> The determination whether to grant a new trial on the ground that the verdict is against the weight of the evidence rests within the discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. *Commonwealth v. Pronkoskie,* 498 Pa. 245, 251, 445 A.2d 1203, 1206 (1982). Before a trial court may award a new trial on this ground, it must appear that the verdict was so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative. *Commonwealth v. Gamber,* 352 Pa.Super. 36, 45, 506 A.2d 1324, 1329 (1986); *Commonwealth v. Barnhart,* 290 Pa.Super. 182, 185, 434 A.2d 191, 192 (1981). When the challenge to the weight of the evidence is predicated on the credibility of the trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence "is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture," *Commonwealth v. Farquharson,* 467 Pa. 50,

60, 354 A.2d 545, 550 (1976) (citations omitted), these types of claims are not cognizable on appellate review. *Id. See also Commonwealth v. Nelson,* 514 Pa. 262, 271 n. 3, 523 A.2d 728 n. 3 (1987) (except in cases where penalty of death is imposed, appellate court should not entertain challenge to weight of evidence because examination is confined to "cold record").

*Id.* 578 A.2d at 6–7, *citing, Commonwealth v. Hunter,* 381 Pa.Super. 606, 617, 554 A.2d 550, 555 (1989).

■■■ At trial, Police Officer Murphy was the only witness to identify appellant as the shooter. The officer identified appellant based on his observations of appellant on the night of the shooting. The officer testified that he saw a male walking across a parking lot preparing to fire a rifle or shotgun. The officer testified that the male, after the shotgun was fired, reappeared and began running towards the officer; and the officer was able to identify such male as the appellant. (N.T. 12/13/88, pp. 71–74.) The officer was able to recognize appellant from routine patrols of the neighborhood. Additionally, the officer testified that he had transported appellant from his mother's house to the hospital approximately one to two months prior to the shooting. (N.T. 12/13/88, pp. 80–81, 89–90.)

Appellant now argues that the verdict was against the weight of the evidence due to the fact that defense counsel introduced evidence that appellant had not received treatment at the hospital, but, instead, appellant's brother had received such treatment. (N.T. 12/15/88, pp. 29–30.) Appellant contends that the officer's identification of appellant as the shooter was therefore incredible, as his identification of appellant as the person he transported to the hospital was mistaken. We do not find that the conflicting evidence presented as to the credibility of the witness's identification testimony demands that we find the jury verdict to have been against the weight of the evidence. The jury was permitted to weigh the conflicting evidence and was free to decide, on its own, which evidence was more credible. The jury, as evidenced by the verdict, obviously found the

officer's testimony to be based on independent previous contacts with appellant and, hence, reliable and credible. The verdict was not so contrary to the evidence so as to shock our sense of justice; we, therefore, refuse to disturb the jury's credibility determination.

■ Additionally, appellant's allegation of trial court error for failure to grant appellant's request that Officer Murphy view a pre-trial lineup is likewise without merit. Generally, the grant or denial of a request for a lineup is within the sound discretion of the trial court, and such a decision will not be disturbed on review absent an abuse of discretion. *Commonwealth v. Sexton*, 485 Pa. 17, 400 A.2d 1289 (1979); *Commonwealth v. Rush*, 522 Pa. 379, 387–88, 562 A.2d 285, 289 (1989). In the present case, Officer Murphy's identification of appellant was grounded on independent observations of appellant prior to the shooting. We do not find an abuse of discretion in denying a pre-trial lineup, where, as in the case *sub judice*, the witness has knowledge and familiarity with the appellant prior to the incident in question and had opportunity to view the appellant at close range during the incident. *See, Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246 (1988).

■ Appellant also alleges trial court error in failing to suppress supposed incriminating statements made by appellant to Detective Dambach on the day of his arrest. Appellant submits that on his arrest day, the detective advised him of his *Miranda*[5] rights and that appellant chose to remain silent. Appellant, however, admits that he did proceed to tell the detective that he had been in possession of a shotgun on the day in question, but did not discuss the incident at issue or give a formal statement. (Appellant's brief at 28.)[6] Appellant argues that the detective's contin-

5. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6. Detective Dambach testified that following appellant's indication that he wished to remain silent, the appellant added, without solicitation, that he had been in possession of a shotgun on August 1, 1988, in the 2200 block of Pacific Street. Following this admission, the detec-

ued questioning regarding biographical information needed to process the arrest was an improper line of questioning in derogation of his *Miranda* rights.

In reviewing the ruling of a suppression court, the reviewing court's initial task is to determine whether the factual findings are supported by the record. In making this determination, if the suppression court held for the prosecution, the reviewing court must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.

*Commonwealth v. Monarch*, 510 Pa. 138, 507 A.2d 74, 78 (1986), *citing, Commonwealth v. Johnson*, 467 Pa. 146, 354 A.2d 886 (1976).

The record indicates that the incriminating statements made by appellant were unsolicited. Appellant made the statements after hearing his *Miranda* rights and after he requested to remain silent, without further provocation by the detective. In *Commonwealth v. Johnson*, 373 Pa.Super. 312, 541 A.2d 332 (1988), this Court summarized the present state of the law with respect to one's right against self-incrimination:

A person must be informed of his or her *Miranda* rights prior to custodial interrogation by police. *Commonwealth v. Sites*, 427 Pa. 486, 490, 235 A.2d 387, 389 (1967). Custodial interrogation is defined as "questioning *initiated* by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." *Id.*, 427 Pa. at 492, 235 A.2d at 390 (emphasis supplied) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). " 'Interrogation' is police conduct 'calculated to, expected to, or likely to evoke admission.' " *Commonwealth v. Brantner*, 486 Pa. 518, 527, 406 A.2d 1011, 1016 (1979) (quoting *Commonwealth v. Simala*, 434 Pa. 219, 226, 252 A.2d 575, 578 (1969)). When an inculpa-

tive testified that the only questions asked of appellant thereafter were of a biographical nature. (Supp. N.T. 12/6/88, pp. 9–13.)

tory statement is not made in response to interrogation by police officers, however, "the statement is classified as a volunteered statement, gratuitous and not subject to suppression for lack of warnings." *Commonwealth v. Whitley*, 500 Pa. 442, 445, 457 A.2d 507, 508 (1983) (citations omitted).

*Id.* 541 A.2d at 336.

In the present case, the detective was not engaged in an interrogation of appellant at the time appellant made the inculpatory statements. Appellant volunteered the statement after he was given his *Miranda* warnings and requested to remain silent. As there was no interrogation, such statements were admissible and, accordingly, the trial court did not err in denying the motion to suppress.

▪▪▪ Furthermore, appellant contends the trial court erred in refusing to allow defense counsel to cross-examine the Commonwealth's firearms expert regarding a lead fragment recovered from the hat of a person in the vicinity of the shooting. Appellant argues that had such cross-examination been permitted, it may have elicited material information as to whether another person using a different gun had committed the crime in question. (*See* Appellant's brief at 29.) [7]

We agree with the trial court's analysis, that such cross-examination would be irrelevant and immaterial to the determination as to whether appellant shot the victim in the present case. Evidence is admissible if, and only if, the evidence logically or reasonably tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact. *Commonwealth v. Davis*, 381 Pa.Super. 483, 554 A.2d 104 (1989) (citations omitted). The record indicates that the lead fragments found in the hat arose from a separate case which was dismissed at its preliminary stage.

7. Appellant suggests that the lead fragments recovered from the hat should have been compared to other lead fragments recovered from the scene to determine their origin.

Furthermore, no evidence exists which indicates that this separate shooting occurred near the time of the shooting in question. Therefore, we are unable to discern how delving into the details of the separate shooting and lead fragments recovered therefrom would be of relevance to the case *sub judice.*

 Appellant's final allegation of trial court error is that it improperly denied the jury's request to have the recorded testimony of Officer Murphy read back to them. The general rule is that when a jury requests that recorded testimony be read to it to refresh its memory, it rests within the trial court's discretion to grant or deny such request. *Commonwealth v. Bell,* 328 Pa.Super. 35, 476 A.2d 439 (1984). The record indicates that the trial judge's reason for denying the jury's request was that it was preferable for the jury to recall the witness's testimony as they heard it from the witness and not from the courtroom stenographer. (N.T. 12/16/88, pp. 2–4.) It was within the trial court's discretion to make such a determination, and we will not disturb its decision.

Finally, appellant alleges sixteen reasons why trial counsel was ineffective and requests that we grant a new trial. Before trial counsel may be deemed ineffective, appellant must meet the three-pronged test, as set forth in our Supreme Court's recent decision of *Commonwealth v. Durst,* 522 Pa. 2, 4–5, 559 A.2d 504, 505 (1989):

The threshold inquiry in such claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. *Commonwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985). If this threshold is met, it must next be established that the particular course chosen by counsel had no reasonable basis designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). Finally, we require that the defendant establish how counsel's commission or omission prej-

udiced him. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

Appellant merely alleges sixteen, unsupported claims of trial counsel's ineffectiveness. Appellant attempts to fulfill none of the above three parts of the test for determining counsel's effectiveness. When asserting ineffectiveness, an appellant must allege sufficient facts upon which a reviewing court may conclude that counsel was ineffective, as we will not consider claims of ineffectiveness in a vacuum. *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981). *See also, Commonwealth v. Hutchinson,* 521 Pa. 482, 556 A.2d 370 (1989) (Allegations of the deprivation of the right to effective counsel are not self-sustaining. The burden of proof of the allegations remains with the claimant: their accuracy to be established by his submission of relevant proofs.). Therefore, as appellant fails to specify how trial counsel's performance was ineffective, nor attempts to satisfy the test for establishing ineffectiveness, we decline to review such claims and deem them abandoned. *See Commonwealth v. Maple,* 385 Pa.Super. 14, 559 A.2d 953, 958 (1989).

For the foregoing reasons, judgment of sentence is affirmed.