J-S69003-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARRIN BUSH | |
| Appellant | No. 1305 EDA 2013 |

Appeal from the Judgment of Sentence March 15, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002918-2012

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and STABILE, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED DECEMBER 15, 2014**

Appellant, Darrin Bush, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for possession of a controlled substance, possession of a controlled substance with intent to deliver ("PWID"), possession of drug paraphernalia, and criminal conspiracy.[1] We affirm the convictions, but vacate the judgment of sentence and remand for resentencing.

The relevant facts and procedural history of this appeal are as follows.

> The facts of this case arise from a series of narcotic surveillances conducted by Philadelphia Police Officer Eugene Kittles in the vicinity of Cumberland and Colorado Streets in Philadelphia. As part of this surveillance, Officer Kittles directed various confidential informants ("C.I.'s") to

---

[1] 35 P.S. § 780-113(a)(16), (30), (32), 18 Pa.C.S.A. § 903, respectively.

purchase narcotics with pre-recorded United States currency. Prior to making the purchases, each C.I. was searched with negative results for additional currency and illegal contraband. The following is a summary of Officer Kittles' observations during his surveillance.

On the afternoon of August 10, 2010, Officer Kittles provided a C.I. with twenty dollars in pre-recorded currency and directed him to 2450 North Colorado Street to purchase narcotics. Outside the given address, the C.I. came in contact with an individual later identified as Timare Bush ("Timare"). Following a brief conversation, Timare told the C.I., "Wait a minute, it's not here. It will be here in a minute." Between one and two minutes later, [Appellant] walked from the 2500 block of North Bouvier Street carrying a black plastic bag in his hand and engaged in a conversation with Timare. [Appellant] and Timare entered the 2450 North Colorado Street property, while the C.I. remained outside. A couple of minutes later, [Appellant] exited the property and walked back toward North Bouvier Street. Timare exited the property shortly thereafter, carrying a plastic bag of yellow items in his hand. He crossed the street to 2453 North Colorado Street, and the C.I. followed. Timare handed the C.I. the yellow items from the bag in exchange for the twenty dollars. Following the transaction, the C.I. turned the four yellow-tinted packets over to Officer Kittles. The off-white, chunky substance inside the packets tested positive for the presence of cocaine.

The following afternoon, August 11, 2010, Officer Kittles was on surveillance with his partner, Officer McKellar, at the 2500 block of North Bouvier Street. Officer Kittles observed [Appellant] exit the property at 2513 North Bouvier Street, get into a black Buick LaCrosse, and drive to a variety store located at 2733 Germantown Avenue. [Appellant] purchased various packets that Officer Kittles testified were commonly used to package marijuana and crack cocaine. [Appellant] exited the store with a black bag, which he put inside the Buick's trunk. He then returned to 2513 North Bouvier Street and reentered the property, carrying the black bag.

Later that same day, Officer Kittles observed Appellant

- 2 -

seated on the steps at the corner of Colorado and Cumberland Streets. He observed a second male, later identified as Wayne Wiggins, at the 2400 block of Colorado Street. During the course of Officer Kittles' surveillance, five different individuals approached Wiggins and handed him what appeared to be cash. On each occasion, [Appellant] would then escort the individual eastbound on Cumberland Street toward 17th Street to the Buick. [Appellant] would enter the Buick from the driver's side. The individuals would enter from the passenger side. [Appellant] would remain in the Buick with each individual for "a short while." After exiting, each individual would leave the scene. [Appellant] would then return to the intersection of Cumberland and Colorado Streets. Law enforcement did not stop any of the individuals.

A short time later, Officer Kittles provided a second C.I. with twenty dollars of pre-recorded currency and directed him to attempt to purchase crack cocaine from the area of 2450 Colorado Street. The C.I. encountered Wiggins and walked with him over to the property at 2453 Colorado Street. This was the same location where Timare had delivered narcotics to the first C.I. one day earlier. In exchange for the twenty dollars, Wiggins handed the C.I. four yellow packets containing an off-white, chunky substance, which tested positive for a cocaine base. Both the packaging and its contents appeared to be the same type as the first C.I. had purchased the previous day.

On August 17, 2010, Officer Kittles observed [Appellant] drive the Buick onto the 2500 block of Bouvier Street. When [Appellant] exited the vehicle, he was carrying what looked like a black backpack or gym bag. An unidentified male approached [Appellant] from the 2400 block of North Colorado Street and handed him what appeared to be a large amount of cash. [Appellant] placed the cash in the bag, which looked like it was filled with money. [Appellant] then made two trips between the Buick and the interior of the 2513 North Bouvier Street property.

On that same day, Officer Kittles gave a third C.I. twenty dollars of pre-recorded currency to attempt to purchase crack cocaine from the area of 2450 North Colorado Street. The C.I. encountered Timare outside 2453 North Colorado

- 3 -

Street. In exchange for the twenty dollars, Timare handed the C.I. yellow packets, containing a substance testing positive for a cocaine base. The packets were identical in size, color, and shape to those delivered to the previous C.I.s.

On August 20, 2010, Officer Kittles gave a fourth C.I. ten dollars in pre-recorded currency to attempt to purchase crack cocaine from the area of 2450 North Colorado Street. The C.I. encountered Timare and handed him the ten dollars in exchange for two green-tinted packets containing an off-white, chunky substance. The substance tested positive for the presence of a cocaine base.

Based upon these observations, police executed a search warrant at 2513 North Bouvier Street on August 20, 2010. When Philadelphia Police Officer Leon McKnight entered the property pursuant to that warrant, [Appellant] was seated at a table between the living room and dining room. Another individual, later identified as "Armstead," was seated on a couch in the living room, an arm's length from [Appellant]. He was facing the front door. Both Armstead and [Appellant] immediately ran together toward the kitchen and tried to escape through the back door. Officer McKnight briefly pinned both men against the door, but [Appellant] managed to free himself and run upstairs. Philadelphia Police Officer Barry Charles pursued [Appellant] up the stairs and cornered him in the second floor back bedroom. [Appellant] evaded the authorities by jumping through the bedroom window.

From the dining room table where [Appellant] was seated, law enforcement recovered twenty-five clear baggies, each with ten clear jars with red tops containing marijuana; three loose bags with bulk marijuana; four bags with ten black-topped jars; three red-topped jars containing marijuana; eight Ziploc bags containing numerous multicolored packets; three scales; a key to the property's front door; two boxes of sandwich bags; one camera; a probation card bearing [Appellant's] name; ten red-topped jars; and ten unused black-topped jars. Law enforcement recovered two baggies of loose crack cocaine from the kitchen table and ten clear baggies containing large chunks of crack cocaine from the refrigerator. The officers

- 4 -

recovered a loaded black Kel-Tech P-11 handgun, as well as 524 green packets of crack cocaine, from under the living room couch cushion where Armstead was seated and just feet from where [Appellant] was seated. Finally, officers executed a search warrant on the Buick and recovered a black backpack containing $13,360.00 in cash and ten red-top and black-top jars matching those recovered from within 2513 North Bouvier Street. The $13,360.00 was broken down as follows: 2,155 one-dollar bills; 131 five-dollar bills; 245 ten-dollar bills; 370 twenty-dollar bills; four fifty-dollar bills; and five one hundred-dollar bills. Certified records from the Department of Transportation verified that the Buick was registered to a Darrin Kadeem Dozier Bush.

[Appellant] continued to evade law enforcement for sixteen months.[2] A couple of days after officers executed the search warrant at 2513 North Bouvier Street, Officer Kittles contacted the probation officer identified on Appellant's probation card, which had been found on the table between the living room and dining room. Officer Kittles failed to determine whether [Appellant] had any upcoming court dates. He explained to the probation officer, however, that [Appellant] was wanted for arrest following a narcotics investigation and asked her to hold [Appellant] the next time he reported. During the first couple of weeks after the arrest warrant was issued, Officer Kittles also communicated with other Philadelphia police officers to let them know that [Appellant] was wanted, in the event they came in contact with him.

Officers Kittles and McKellar looked for [Appellant] on "numerous" occasions—approximately 100 times—in the area where they had previously conducted their surveillance. They would specifically go by 2513 North Bouvier Street, although Officer Kittles never knocked on the door to the property. Officer Kittles did not see anyone whom he recognized as [Appellant's] acquaintance and he did not ask anyone on the street as to [Appellant's] whereabouts. [Appellant] was ultimately arrested on

---

[2] The Commonwealth filed a criminal complaint on September 9, 2010.

December 22, 2011 on Colorado Street, one street over from the 2513 North Bouvier Street property.

(Trial Court Opinion, filed December 31, 13, at 3-8) (internal footnotes and citations to the record omitted).

On March 21, 2012, the Commonwealth filed a criminal information charging Appellant with multiple offenses related to his drug dealing activities. At a pretrial hearing on October 12, 2012, Appellant made an oral motion to dismiss the charges, pursuant to Pa.R.Crim.P. 600. Defense counsel argued the Commonwealth did not exercise due diligence when attempting to locate Appellant prior to his arrest. On December 14, 2012, the court denied Rule 600 relief.

Following a bench trial, the court convicted Appellant of possession of a controlled substance, PWID, possession of drug paraphernalia, and conspiracy. On March 15, 2013, the court conducted Appellant's sentencing hearing. For the PWID conviction, the court sentenced Appellant to five (5) to ten (10) years' imprisonment. The sentence included a mandatory minimum term, pursuant to 42 Pa.C.S.A. § 9712.1. For the conspiracy conviction, the court imposed a concurrent term of five (5) to ten (10) years' imprisonment. The court imposed no further penalty for the remaining convictions. Appellant timely filed a post-sentence motion on March 22, 2013, which the court denied on March 27, 2013.

Appellant timely filed a notice of appeal on April 26, 2013. On April 29, 2013, the court ordered Appellant to file a concise statement of errors

complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant timely filed a Rule 1925(b) statement on May 20, 2013.

Appellant now raises two issues for our review:

> DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING [APPELLANT'S] MOTION TO DISMISS UNDER PA.R.CRIM.P. 600, WHERE THE POLICE WERE NOT DILIGENT IN THEIR EFFORTS TO LOCATE AND ARREST [APPELLANT] AFTER THE COMPLAINT WAS FILED?

> DID THE TRIAL COURT IMPOSE THE MANDATORY MINIMUM SENTENCE PURSUANT TO 42 PA.C.S. § 9712.1 IN VIOLATION OF THE UNITED STATES SUPREME COURT'S RECENT DECISION IN *ALLEYNE V. UNITED STATES*[, ___ U.S. ___, 133 S.CT. 2151, 186 L.ED.2D 314 (2013)]?

(Appellant's Brief at 3).

In his first issue, Appellant acknowledges that Officer Kittles made some effort to determine Appellant's whereabouts and make an arrest. Specifically, Officer Kittles contacted Appellant's probation officer, repeatedly drove through Appellant's neighborhood, and notified uniformed officers in the area about the arrest warrant. Appellant insists, however, Officer Kittles could have gone to Appellant's previous addresses and questioned Appellant's neighbors regarding his whereabouts. Moreover, Appellant maintains Officer Kittles did not follow up with the probation officer, which would have led Officer Kittles to discover that Appellant was in court for an unrelated matter in June and July 2011. Appellant concludes Officer Kittles did not exercise due diligence in his search for Appellant, and the court abused its discretion in denying Appellant's Rule 600 motion. We disagree.

"In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." ***Commonwealth v. Hunt***, 858 A.2d 1234, 1238 (Pa.Super. 2004) (*en banc*), *appeal denied*, 583 Pa. 659, 875 A.2d 1073 (2005).

> The proper scope of review…is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> \* \* \*
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime.

***Id.*** at 1238-39 (internal citations and quotation marks omitted).

Rule 600 sets forth the speedy trial requirements and provides in pertinent part:

**Rule 600. Prompt Trial**

\* \* \*

[(A)](3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

\* \* \*

(C)  In determining the period for commencement of trial, there shall be excluded therefrom:

(1)  the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;

(2)  any period of time for which the defendant expressly waives Rule 600;

(3)  such period of delay at any stage of the proceedings as results from:

(a)  the unavailability of the defendant or the defendant's attorney;

(b)  any continuance granted at the request of the defendant or the defendant's attorney.

\* \* \*

Pa.R.Crim.P. 600(A)(3), (C)(1)-(3).[3]  "Rule 600 generally requires the Commonwealth to bring a defendant on bail to trial within 365 days of the date the complaint was filed."  **Hunt, supra** at 1240.  A defendant on bail

---

[3] A new version of Rule 600 went into effect on July 1, 2013, after the trial court disposed of Appellant's Rule 600 motion.

after 365 days, but before trial, may apply to the court for an order dismissing the charges with prejudice. ***Id.*** at 1240-41. To obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion for relief. ***Id.*** at 1243.

"The mechanical run date is the date by which the trial must commence under Rule 600." ***Commonwealth v. McNear***, 852 A.2d 401, 406 (Pa.Super. 2004).

> It is calculated by adding 365 days (the time for commencing trial under Rule 600) to the date on which the criminal complaint is filed. The mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.

***Id.*** (quoting ***Commonwealth v. Lynn***, 815 A.2d 1053, 1056 (Pa.Super. 2003)).

In the context of Rule 600, "excludable time" is differentiated from "excusable delay" as follows:

> "Excludable time" is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, …any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

***Commonwealth v. Brown***, 875 A.2d 1128, 1135 (Pa.Super. 2005), *appeal*

*denied*, 586 Pa. 734, 891 A.2d 729 (2005) (quoting **Hunt, supra** at 1241).

"In determining whether the police acted with due diligence [in trying to apprehend a defendant], a balancing process must be employed where the court, using a common sense approach, examines the activities of the police and balances [these] against the interest of the accused in receiving a fair trial." **Commonwealth v. Ingram**, 591 A.2d 734, 737 (Pa.Super. 1991), *appeal denied*, 530 Pa. 631, 606 A.2d 901 (1992). "The actions must be judged by what was done, not by what was not done. In addition, the efforts need only be reasonable; lack of due diligence should not be found simply because other options were available or, in hindsight, would have been more productive." ***Id.***

Instantly, the Commonwealth filed the criminal complaint on September 9, 2010. Therefore, the Rule 600 mechanical run date was September 9, 2011. Law enforcement, however, could not immediately apprehend Appellant. At the Rule 600 hearing, Officer Kittles testified about his efforts to locate Appellant. Ultimately, police arrested Appellant on December 22, 2011.

Significantly, the trial court evaluated Officer Kittles' testimony as follows:

> Officer Kittles contacted [Appellant's] probation officer to notify her of the warrant for [Appellant's] arrest and asked that she hold [Appellant] if he reported to her. Familiar with [Appellant's] appearance and acquaintances, Officer Kittles surveyed [Appellant's] neighborhood approximately 100 times looking for [Appellant] and/or his

- 11 -

acquaintances. Finally, Officer Kittles alerted other Philadelphia police officers to the outstanding arrest warrant. Given that Officer Kittles testified that [Appellant's] case was but one in his substantial case load, these measures demonstrated a reasonable effort on the Commonwealth's part to locate and apprehend [Appellant].

Although [Appellant] argues that the Commonwealth could have researched when [Appellant] may have next been in court, the test is *not* a venture into hindsight reasoning as to whether certain individuals had been contacted, or other things done, an arrest would probably have been made.

(*See* Trial Court Opinion at 17-18) (emphasis in original) (internal citations and quotation marks omitted).

Based upon the foregoing, the court found the Commonwealth had acted with due diligence in attempting to find Appellant. We see no abuse of discretion in the court's decision to omit this portion of the pre-arrest time from the Rule 600 run date calculation. *See Hunt, supra*. *See also Ingram, supra* (holding Commonwealth acted with due diligence in attempting to apprehend defendant after filing of criminal complaint; officers tried to serve arrest warrant at defendant's last known address, information from defendant's mother led officers to believe defendant had left town, police entered "wanted" message into PCIC database, and officers went to places where they had seen defendant in past). The concept of due diligence in this context does not require the Commonwealth to undertake an all-out manhunt for every fugitive from justice; thus, the delay between September 9, 2010 and December 22, 2011 was excusable. *See*

Pa.R.Crim.P. 600(C)(1). This delay yielded an adjusted run date of December 21, 2012.

Significantly, Appellant moved for dismissal pursuant to Rule 600 on October 12, 2012, before the adjusted run date. Therefore, Appellant did not have a viable Rule 600 claim when he moved for dismissal. **See Hunt, supra**. Under these circumstances, the court properly denied Appellant's Rule 600 motion. **Id.**

In his second issue, Appellant asserts the court imposed a mandatory minimum sentence for his PWID conviction due to the presence of a firearm in close proximity to the controlled substances. Appellant argues the court expressly determined the applicability of Section 9712.1 at the sentencing hearing by a preponderance of the evidence. Appellant insists, however, that any factor increasing a mandatory minimum sentence must be determined by the factfinder beyond a reasonable doubt. Appellant concludes the court imposed an illegal sentence, and we must remand the case for re-sentencing. We agree.

We are mindful of the United States Supreme Court's decision in **Alleyne v. United States**, in which the Court expressly held that any fact increasing the mandatory minimum sentence for a crime is considered an element of the crime to be submitted to the fact-finder and found beyond a reasonable doubt. **Id.** Here, the court imposed the mandatory minimum sentence under Section 9712.1 (governing sentences for certain drug

offenses committed with firearms) for Appellant's PWID conviction. Section 9712.1(a) sets forth a mandatory minimum sentence of five (5) years' imprisonment where a defendant is convicted of PWID "when at the time of the offense the person or the person's accomplice is in physical possession or control of a firearm, whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or in close proximity to the controlled substance…." 42 Pa.C.S.A. § 9712.1(a). Section 9712.1(c) states that the statutory provisions shall not be an element of the crime and applicability of the statute shall be determined by the court at sentencing by a preponderance of the evidence. 42 Pa.C.S.A. § 9712.1(c).

Recently, in *Commonwealth v. Newman*, 99 A.3d 86 (Pa.Super. 2014) (*en banc*), this Court addressed the constitutionality of Section 9712.1 in light of the United States Supreme Court's decision in *Alleyne, supra*.[4] Relying on *Alleyne*, *Newman* held that Section 9712.1 can no longer pass constitutional muster as it "permits the trial court, as opposed to the jury, to increase a defendant's minimum sentence based upon a preponderance of the evidence that the defendant was dealing drugs and possessed a firearm, or that a firearm was in close proximity to the drugs." *Newman, supra* at 98. Thus, this Court vacated Newman's PWID sentence and remanded for

_____

[4] This Court also made clear that *Alleyne* is subject to limited retroactivity; in other words, *Alleyne* is applicable to all criminal cases still pending on direct review. *Id.* at 90. Because Newman's case was still pending on direct appeal, the holding in *Alleyne* applied to Newman's case.

re-sentencing without imposition of the mandatory minimum under Section 9712.1. *See also Commonwealth v. Valentine*, ___ A.3d ___, 2014 PA Super 220 (filed October 3, 2014) (involving appeal of sentence arising from jury trial; extending logic of *Alleyne* and *Newman* to Sections 9712 and 9713 and holding those sections are likewise unconstitutional insofar as they permit automatic increase of defendant's sentence based on preponderance of evidence standard).

Instantly, the court conducted a bench trial and convicted Appellant of multiple offenses, including PWID. At the subsequent sentencing hearing, the Commonwealth presented a police witness, Officer McKnight, to testify concerning the applicability of Section 9712.1. Officer McKnight explained that he was one of the officers executing the search warrant at 2513 North Bouvier Street. Officer McKnight entered the residence and observed Appellant seated at a table in the dining room. Officer McKnight saw narcotics on the table. Another individual, Mr. Armstead, was sitting on a sofa directly in front of the table. A subsequent search of the sofa yielded a loaded firearm, which was secreted under a cushion. After receiving the testimony and argument from counsel, the court found by a preponderance of the evidence that Section 9712.1 applied to Appellant's PWID conviction. (*See* N.T. Sentencing Hearing, 3/15/13, at 21-22.) Given this Court's decisions in *Newman* and *Valentine*, however, we must vacate and remand for resentencing. Accordingly, we affirm Appellant's convictions, but

we vacate the judgment of sentence and remand for resentencing without imposition of a mandatory minimum sentence.[5]

Judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2014

---

[5] The Commonwealth does not oppose a remand for resentencing in light of **Alleyne**. (**See** Commonwealth's Brief at 11-12.)