J-S19020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| RAMON GONZALES | |
| Appellee | No. 2952 EDA 2014 |

Appeal from the Order entered September 19, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0002728-2014

BEFORE: BENDER, P.J.E., STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.: **FILED MAY 13, 2016**

The Commonwealth appeals from the trial court's September 19, 2014 order dismissing all charges against Appellee, Ramon Gonzales, under Pa.R.Crim.P. 600. We reverse and remand.

The trial court summarized the underlying facts:

> On October 16, 2012, Detective Martin Sheeron was placed in charge of preparing an arrest warrant approved for [Appellee]. The arrest warrant was approved on October 16, 2012,[1] and Detective Sheeron executed the arrest warrant, along with a search warrant, on [Appellee's] residence at 115 East Lippincott Street. Detective Sheeron testified the address of 115 Lippincott was found in either the DMV database or criminal history database. Detective Sheeron and three other police officers knocked at the door of 115 East Lippincott Street, but there was no reply. The officers then removed the door and searched the

---

[1] The certified record contains a criminal complaint dated October 16, 2012, the same day the warrant for Appellee's arrest was approved.

house but failed to find [Appellee] or any evidence they were seeking. After the house was searched, people sitting on their porch a couple houses down told the officers the house belonged to someone's cousin, but did not specify whom. The police officers attempted to speak to them from the front door, but did not walk over to them. Detective Sheeron then entered [Appellee's] information into NCIC and PCIC systems as a warrant, so if [Appellee] was stopped by another officer, he would be arrested on the arrest warrant. Detective Sheeron then prepared a packet for the warrant unit containing: [Appellee's] information, photos, a copy of the warrant, the NCIC entry, affidavit, and other related documents.

The warrant unit unsuccessfully attempted to execute the warrant at 115 East Lippincott Street seven times on: October 17, 2012, October 31, 2012, November 12, 2012, May 2, 2012 [sic], August 15, 2013, December 13, 2013, and December 23, 2013. The warrant, [a]s entered into NCIC, stated, 'Frequents the area of 3000 Lee, 3100 Lee, 100 East Clearfield, and 100 East Lippincott.' Detective Sheeron testified he never specifically went to the city blocks mentioned in the warrant to search for [Appellee], but kept his eyes peeled for him when in those areas for other police work. Detective Sheeron further testified he did not search for [Appellee's] address using: the gas company records, social security database for addresses, the phone company, or Facebook. [Appellee] was arrested on February 23, 2014, at 940 East Russell Street.

Trial Court Opinion, 6/10/2015, at 1-2 (record citations omitted).

On July, 28, 2014, Appellee filed a motion to dismiss charges[2] under Pa.R.Crim.P. 600. The trial court conducted a hearing on September 19, 2014. At the conclusion of that hearing, the trial court entered the order on appeal dismissing all charges. The sole issue on appeal is whether the trial court erred in finding the time between the Commonwealth's complaint and

_____

[2] The Commonwealth has charged Appellant with attempted murder, aggravated assault, and unlawful possession of a firearm.

- 2 -

Appellee's arrest is chargeable to the Commonwealth for purposes of Appellant's Rule 600 speedy trial motion.

In this case, Rule 600 required the Commonwealth to commence trial within 365 days of the date of the criminal complaint. Pa.R.Crim.P. 600(A)(2)(a). The 365-day period includes "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence[.]" Pa.R.Crim.P. 600(C)(1). The Commonwealth filed its complaint on October 16, 2012. Appellee filed his Rule 600 motion 650 days later, on July 28, 2014. As explained above, the Commonwealth did not apprehend Appellee until 496 days after it filed the Complaint. If the 496 days are chargeable to the Commonwealth under Rule 600, we must affirm the trial court's order. If they are not, we must reverse.

> In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review ... is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule

[600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters ..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Ramos*, 936 A.2d 1097, 1100 (Pa. Super. 2007) (*en banc*).

The Commonwealth bears the burden of proving, by a preponderance of the evidence, that it acted with reasonable diligence in attempting to apprehend Appellee. *Commonwealth v. Newman*, 555 A.2d 151, 155 (Pa. Super. 1989), *appeal denied*, 655 A.2d 512 (Pa. 1995).

In determining whether the police acted with due diligence, a balancing process must be employed where the court, using a common sense approach, examines the activities of the police and balances this against the interest of the accused in receiving a fair trial. We have held that, where the Commonwealth exercises due diligence in attempting to locate a defendant prior to arrest, the period of elapsed time between the date of the filing of the complaint and the date of the arrest is excludable[.]

*Id.* Due diligence "does not demand perfect vigilance and punctilious care, but rather a reasonable effort." *Commonwealth v. Laurie*, 483 A.2d 890, 892 (Pa. Super. 1984). "[L]ack of due diligence should not be found simply because other options were available or, in hindsight, would have been more productive." *Commonwealth v. Ingram*, 591 A.2d 734, 737 (Pa. Super. 1991), *appeal denied*, 606 A.2d 901.

In *Laurie*, the trial court dismissed charges against the defendant, noting that police made only one phone call to the defendant's last known address. *Laurie*, 483 A.2d at 892. This Court reversed, noting that police spoke to the defendant's family members, checked for information at local utilities companies, and placed an advertisement in a local newspaper. *Id.* at 891. We explained:

> It is not the function of our courts to second-guess the methods used by police to locate accused persons. The analysis to be employed is whether, considering the information available to the police, they have acted with diligence in attempting to locate the accused. Deference must be afforded the police officer's judgment as to which avenues of approach will be fruitful.

*Id.* at 892 (quoting *Commonwealth v. Mitchell*, 372 A.2d 826, 832 (Pa. Super. 1977)). That police could have done more was not sufficient reason to grant the defendant's speedy trial motion.[3] *Id.* Police need not "exhaust

---

[3] At the time of the *Laurie* decision, Pa.R.Crim.P. 1100 governed speedy trials. Rule 1100 has since been amended several times and renumbered
*(Footnote Continued Next Page)*

every conceivable method of locating a defendant." *Id.* "[T]he focus of our inquiring is on what was done, not with what should have been done." *Id.*

The Commonwealth also relies on ***Commonwealth v. Gratkowski***, 430 A.3d 998 (Pa. Super. 1981). In ***Gratkowski***, the defendant claimed he was living and working in Erie County in between the filing of the complaint against him and his arrest, and that police could have located him through Department of Motor Vehicles ("DMV") records, the Bureau of Employment Security, his local bank account, or the Restaurant Association. *Id.* at 1000. The defendant also noted he had family in Erie and the police did not talk to them. *Id.* The Commonwealth responded that Appellant left his last known address three months prior to the complaint. Police spoke to the manager of Appellant's last known place of employment, who informed police that Appellant moved "out west." *Id.* Several police officers who knew the defendant by sight kept a lookout for him while on patrol, and local police contacted other police agencies. *Id.* This Court deemed police efforts reasonable, and rejected the defendant's argument that counsel was ineffective for failing to file a speedy trial motion. *Id.* at 1001.

In ***Ingram***, police learned from the defendant's mother that he had no intent to return to his last known address and thus only went to that location once. ***Ingram***, 591 A.2d at 737. Instead, they entered the defendant's

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

Rule 600. No substantive difference between the current and prior versions of the rule has any bearing on this appeal.

- 6 -

name into a national database and, during routine patrol, observed locations where they had seen the defendant in the past. *Id.* The *Ingram* Court deemed these efforts reasonable and declined to exercise "judicial hindsight." *Id.*

Appellee relies on *Commonwealth v. Williamson*, 409 A.2d 101 (Pa. Super. 1979), in which this Court held that police failed to exercise reasonable diligence during 22 days between the complaint and the defendant's arrest. During that time, police learned of another charge against the defendant and his pending arraignment. *Id.* at 103. Rather than attempt to locate the defendant immediately, they provided the warrant to officers scheduled to appear on the date of the defendant's arraignment on the other charge. *Id.* Thus, the defendant was arrested at an arraignment on an unrelated charge, 22 days after the complaint in question. "After the police became aware that appellant was involved in another pending criminal case [. . .] the means for ascertaining his whereabouts were at hand." *Id.* "Whether he was on bail or in jail, a minimum investigation would have disclosed his whereabouts." *Id.* Likewise, Appellee relies on *Commonwealth v. Collins*, 404 A.2d 1320, 1322-23 (Pa. Super. 1979), in which this Court held police did not exercise due diligence because they failed to coordinate with other police departments, including the probation officers overseeing a probation sentence the defendant was serving at the time. The defendant stated that

his county probation officer and his state parole officer both knew his whereabouts. *Id.* This Court described police efforts as follows:

> A single unsuccessful visit to the homes of two relatives, followed a month and one-half later by dropping one's card at the accused's mother's residence with a request to be contacted should the accused come calling, falls far short of due diligence. The Commonwealth in fact made no effort until the end of April, when Philadelphia police were finally contacted.

*Id.* at 1323.

Instantly, police visited Appellee's last known address—115 East Lippincott Street—eight times, including the initial attempt to execute the arrest warrant and seven follow up attempts by the warrant division. N.T. Hearing, 9/19/2014, at 8, 12, 18-19. Police located the address through either DMV records or Appellee's criminal history. *Id.* at 9, 16-17. The only address on Appellee's criminal extract was 115 East Lippincott. *Id.* at 25. Police also entered the warrant into several statewide and national databases, so that the warrant would be on record in the event another police department stopped or arrested Appellee. *Id.* at 11. The databases also reflected that Appellee was known to frequent the area of "3000 Lee, 3100 Lee, 100 East Clearfield, and 100 East Lippincott[.]" *Id.* at 15. The investigating officer visited that location "numerous times" and looked for Appellee when his other investigations brought him nearby. *Id.* at 16. The officer did not run a Google search or search Facebook for information, nor did he check welfare records, tax records, or utilities records. *Id.* at 17-18. Ultimately, police apprehended Appellee at 940 East Russell Street. *Id.* at

22. The record does not reveal the location of 940 East Russell Street in relation to the locations police believed Appellee frequented.

To summarize, police attempted eight times to find Appellee at his last known address. They also repeatedly watched the neighborhood Appellee was known to frequent. Finally, police entered Appellee's warrant in to several databases so that he would be arrested if stopped in another location. In *Ingram*, police repeatedly observed locations where they had seen defendant in the past, and entered his warrant into databases. They only visited the defendant's last known address once, as they had reason to believe he would not return. *Ingram*, 591 A.2d at 737. This Court deemed the investigation reasonably diligent. Likewise, in *Gratkowski*, police spoke to the defendant's former manager, kept an eye out for him in his last known neighborhood, and contacted other police departments. This Court deemed the investigation reasonably diligent, despite the defendant's assertions that police could have found him through DMV records, bank records, and/or employment records. The instant case is very similar, therefore, to *Ingram* and *Gratkowski*.

In *Collins* and *Williamson*, on the other hand, the record contained objective evidence of a lack of diligence. In *Williamson*, the defendant was arrested, awaiting arraignment, and possibly in custody on another charge. In *Collins*, the defendant was on probation on another charge and under the supervision of county and state officers. Police in this cases took very little

action and ignored readily available means of apprehending the defendant sooner. *Collins* and *Williamson* did not rest on hindsight suggestions of additional avenues of investigation.

In light of all of the foregoing, we are constrained to conclude that the trial court misapplied the law in this case. The search for Appellee here was similar to searches we have deemed reasonably diligent in other cases. The availability of other means of potentially locating Appellee—tax records, welfare records, and utilities company records—does not alter the result. We have repeatedly held that police officers are entitled to deference in choosing which means of locating a defendant will be the most effective. *Laurie*, 483 A.2d at 892. Also, Rule 600 requires us to balance the accused's speedy trial rights against the need to protect society. *Ramos*, 936 A.2d at 1100. We conclude the trial court erred in granting Appellee's Rule 600 motion and dismissing all charges. We therefore reverse the trial court's order and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/13/2016

- 10 -