## East Caln Township v. Borough of Downingtown

*Glenvar E. Harman,* for petitioner.

*Rogers A. Bender,* for respondent.

GAWTHROP, P. J., March 22, 1966.—The Township of East Caln, having established a sewer district adjacent to the east boundary of the Borough of Downingtown, and having reached no agreement with the adjacent borough for connecting its proposed sewer lines with Downingtown's existing sewer system, filed its petition under the provisions of the Act of May 1, 1933, P. L. 103, art. XV, sec. 1530, 53 PS §66530, setting forth the facts and asking the court to determine that such connection can be made "without impairing the usefulness of the existing sewer" and to appoint viewers to proceed in accordance with the act. The borough filed a responsive answer, and evidence was presented at a hearing held in the matter upon due notice given. After argument on the record and after consideration of the matter, it is before us for decision. The prayer of the petition must be denied.

The plain meaning of the statutory language seems clear. Webster's New International Dictionary defines "impair" as meaning "to make worse; to diminish in quantity, value, excellence, or strength; to deteriorate; damage, as, to impair health". Thus, the sole question before us is whether the result of such connection would be to damage, deteriorate, diminish in strength or value or make worse in its operation the existing sewer of the borough. Logically and realistically, the "existing sewer" includes the whole of the borough's present sewage system, including its mains, treatment plant and all of its components. The term "existing sewer" does not, as petitioner argues, exclude the sewage treatment plant; nor is the intent of the act, as

the township contends, to prevent the township's connection with the system only if such connection would *destroy* its usefulness. To destroy is to demolish: Webster's, supra. It is not merely to damage or make worse. The plain words of the statute may not be disregarded under the pretext of accomplishing a given purpose, especially where its language is not equivocal and a literal interpretation of it will not defeat the purpose of the legislation: Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 PS §551; Commonwealth v. Sun Ray Drug Company, 360 Pa. 230, 239; MacDougall v. MacDougall, 397 Pa. 340, 343.

As in other matters in which a court is empowered to act upon petition when it has found certain facts or conditions to exist, the burden of proof falls upon East Caln Township to satisfy the court fairly and reasonably that the proposed connection with the borough's existing sewer system can be made without damaging, worsening or diminishing in strength the usefulness or performance of that system in its present function of serving the borough's inhabitants and others now properly users of it. We are enjoined by the act to determine, in the light of the public interests of both these adjacent municipalities, whether that can be done. The evidence persuades us clearly that it cannot.

Petitioner relies upon Darby Township v. Collingdale Borough, 74 D. & C. 238, and In re: Connection Of Logan Township Realty With City Of Altoona Sewer System, Q. S. Blair County, Pa., June Sessions, 1965, no. 25 (unreported), in support of its position. Neither case is apposite, however, because the sewer system in each of those instances was clearly operating below design capacity and the additional load to be imposed by permitting the proposed connection would leave it still operating below design capacity. Here the contrary appears, so that those cases are neither controlling nor persuasive.

The township relied on the testimony of David Kohlhas, a member of its board of supervisors, and Garfield E. Smith, its consulting engineer. From Mr. Kohlhas' evidence, we find that East Caln, Downingtown and Caln Township earlier obtained a feasibility study of joint water and sewer systems made by A. W. Martin Associates. That study determined comparative costs of the alternatives of the township's connecting with the borough or having separate plants. As a result, East Caln seeks the connection here proposed. Mr. Smith stated the opinion that the proposed connection would not impair the usefulness of Downingtown's sewer system by adding to it the further load of 600 additional users creating about 60,000 additional gallons of sewage per day. However, he admitted he was not familiar with the sewer system as a whole, never having made an inspection of it, and that his opinion was based in part on A. W. Martin Associates' feasibility study, which recommended basic expansion of the borough's existing system in order for additional connections to be feasible. The weight of his opinion is further affected by his comment, made in discussing the comparative sizes of East Caln's proposed 10-inch main which it seeks to connect with the borough's eight-inch main nearest the common boundary, that: "I do not want to get caught in East Caln Township in the future the way Downingtown is caught with the main too small. I would prefer to put in a ten-inch main now rather than have to enlarge it later". That statement recognizes a present at least partial inadequacy of the existing system.

On the other hand, we find from certain uncontroverted evidence produced by the borough that the existing system is presently inadequate, is already overloaded and would be further overloaded if the proposed connection were made. Edwin B. Wagner, a sanitary engineer who designed sewer studies or plans for the

borough in 1946 and 1962, established that the sewer pipes are now carrying practically full capacity, as shown by surcharge, or water leaking from the lines, to which infiltration of ground water into the system contributes substantially; that the two sludge beds in the treatment plant are already overloaded, having been built to service about 5,600 persons, and that one of them, being uncovered, does not render full or efficient service during winter months.

Morris W. Holman, Jr., assistant borough manager, a graduate engineer, who is technical advisor on and thoroughly familiar with the existing sewer system, established that the flow of sewage in the mains is presently impaired by the existing surcharge, which creates eddy currents, dead spots and deposits, causing inefficient functioning of the system; that several manholes are presently backed up with flow which rises several inches above the levels of the pipes leading into and out of them; that the secondary clarification tanks in the treatment plant were designed to pump an ideal load of 1,000,000 gallons per day, but in fact are pumping 1,600,000 gallons daily; that the sludge beds designed to service about 5,600 persons were "pretty tight and tough to operate", especially in winter, with the borough's present population; that the system, although overloaded at present, has not yet been so impaired that it does not operate, but that, in his opinion, the addition of 600 users and 60,000 gallons daily additional load would impair the operation, efficiency and usefulness of the existing system.

On the 1960 census, Downingtown's population was 5,598, the equivalent of the design capacity of the sludge beds. That figure has since grown considerably. Estimating 3.5 persons per housing unit, the equivalent of the factor employed by petitioner's engineer, Mr. Smith, for which building permits have since been issued and the units occupied, the borough now has

approximately 7,500 resident users plus a substantial number of persons, perhaps 1,000 to 1,500, residing outside its boundaries who work in the borough and are daily users during the work week. On this phase of the matter, the testimony of W. I. Leland, borough manager, was admissible and properly remains in the record. Only its accuracy is open to question, but accurate or not, the borough has shown that its existing system is already overloaded, whatever may be the present population.

Petitioner's argument that those population figures are irrelevant because the witness Holman established that "peak loads" were created when residents prepared to go to work in the early morning and upon their return home just before suppertime is without merit. Design capacity of the system necessarily had to be, and in fact was, planned with regard to total population, recognizing that certain peak loads would occur. That evidence, therefore, bears directly upon whether design capacities would be exceeded so as to impair the usefulness of the system by reducing its effective operation or overloading its actual capacity.

Finally, the testimony of Christian T. Beechwood, sanitary engineer in the Pennsylvania Department of Health, who stated his opinion, based on his familiarity with the system and on having heard the testimony of all the borough's witnesses, that the proposed connection would place such an additional load upon the existing sewer system, including the treatment works, as to reduce the efficiency of the latter to the point where the plant could not meet Sanitary Water Board requirements, was undoubtedly relevant. It was also clearly admissible: Tobash v. Jones, 419 Pa. 205. The content of the questions put to the witness, although perhaps not in usual form, in effect asked him to assume the truth of the testimony he had heard. Thereafter, based upon his opinion above stated, it

was also relevant and competent for him to state that he, on behalf of the Commonwealth, would not recommend the issuance of a permit for the proposed connection. Had he been asked those two questions in inverse order, there would have been no doubt of admissibility of his answers. The fact that he was not does not make his replies inadmissible where the content of both appears. It follows that if the proposed connection were approved by the court, the Commonwealth could prevent its use and operation.

Under all the evidence, petitioner has not carried its burden of showing that the proposed connection would not impair the usefulness of Downingtown's existing sewer system. Consequently, the prayer of the petition is refused and the petition is dismissed.