The ORBISONIA–ROCKHILL JOINT MUNICIPAL AUTHORITY

v.

CROMWELL TOWNSHIP, HUNTINGDON COUNTY, Pennsylvania, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 24, 2009.

Decided July 23, 2009.

Lowell R. Gates, Lemoyne, for petitioner.

Larry D. Lashinsky, Hollidaysburg, for respondent.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Cromwell Township (Township) appeals from an order of the Court of Common Pleas of Huntingdon County (trial court) which entered judgment in favor of the Orbisonia–Rockhill Joint Municipal Authority (Authority) and ordered Township to pay Authority $23,579.75, for breach of contract. We affirm.

The Authority is a joint municipal authority, which controls municipal water and sewer service for the Huntingdon County boroughs of Rockhill and Orbisonia and for a few residents within Township. Township is a second class township that surrounds the two small boroughs.

As found by the trial court, in January of 2005, both parties had issues with the Department of Environmental Resources (Department). Specifically, the Authority was experiencing an overload at its waste water treatment plant, such that Department issued a moratorium with respect to new users. Township, on the other hand, was being pressured by Department to execute its Act 537 plan. That plan provided for public sewers to be constructed from the village of Pogue to Rockhill Furnace and for the construction of a treatment facility. Department sent a letter to Township that if it did not proceed with the plan, a $300.00 a day civil penalty would be imposed. The urging of the Department prompted an informal discussion between the Authority and Township in early 2005, relative to a joint project.

Township, thereafter, advertised for bids in the summer of 2005. The bids were high and the cost to individual users would have been $70.00 per month, per household. Township supervisors, their counsel and engineers met with the Department officials in July, and despite the fact that the bids were far above estimates, they were told that they nonetheless had to proceed. Township supervisors then turned to the Authority for help.

Township supervisor, Mr. Whitsel testified that the hope was to put all of Township's sewage into the Authority's plant and help the Authority increase the capacity of its plant and to save money for Township residents. A series of joint meetings were then held in August and September of 2005.

According Mr. Whitsel, at the first meeting on August 15, 2005, the Authority's engineers were authorized to do a feasibility study for a joint project. The minutes of the public meeting reflect the following:

> Cromwell Township Supervisors agreed by motion ... and unanimous vote to pay one-half of the engineering fees already incurred preparing preliminary plans and work for the ORJMA [Authority] sewer upgrade. Costs will be provided to Cromwell Township.

(Record, Part 2 at 31.) On September 12, 2005, the engineering firm, employed by the Authority, submitted a report with regards to the project. The engineer who prepared the report, Mr. Morse, stated that from the Authority's perspective, the end result of the joint project was going to be less of a cost to the Authority's customers. A joint project would cost all of the customers $45.00 per month.

A public hearing was held on September 25, 2005 and was continued to September

29, 2005 at which time the parties signed a Memorandum of Understanding (Memorandum) to pursue a joint sewage project. The Memorandum was utilized to memorialize the intent of the parties, since approval for the project was necessary from the Department and the Pennsylvania Infrastructure Investment Authority (Pennvest), the major funding source for the project, and were prerequisites to a final agreement.

On November 15, 2005, a "Sewage Agreement" (Agreement) between the Authority and Township was executed. The Agreement provided in pertinent part:

> 4. *PASSAGE OF ORDINANCES.* Cromwell [Township] agrees that it will pass all ordinances necessary to effectuate this entire project . . . and an ordinance setting forth that Cromwell [Township] will not vacate any ordinance passed in effectuation of this Agreement as long as ORJMA [Authority] is not in default of this Agreement.
>
> \* \* \*
>
> 7. *OWNERSHIP OF COLLECTION SYSTEM.* ORJMA [Authority] shall be the owner of the collection system constructed in order to provide sewage service to customers in Pogue, Pine Tree Village and the Southern Huntingdon County High School complex.
>
> 8. *COLLECTION OF SEWAGE FEES AND PAYMENT OF DEBT SERVICE.* Once the sewage collection in Cromwell [Township] is fully operational, ORJMA [Authority] shall be responsible to collect all sewage fees. . . . In return, ORJMA [Authority] agrees that it will be responsible to pay the debt service arising from all loans entered into to pay for the entire project.
>
> \* \* \*
>
> 17. *EXTENT OF LEGAL REMEDIES.* It is agreed that either party, who has suffered from the failure of the other party to abide by its obligations under this Agreement, shall have the right to seek equitable relief under and/or monetary damages (including consequential, incidental and punitive damages) . . . from the breaching party. The prevailing party shall also be entitled to collect from the breaching party all legal fees, court costs, and expert fees incurred by it in any legal action taken to defend its right under this Agreement.

(R.R. at 15a—20a.) Township proceeded to pass the necessary ordinances and to submit to the Department an amended Act 537 plan.

At the general election held in November of 2005, however, Mr. Booher, who was unilaterally opposed to the project, was elected as a supervisor. Mr. Whitsel, who understood the political ramifications of Mr. Booher's election, resigned as a supervisor in December of 2005.

Thereafter, the newly elected supervisors moved quickly in early 2006, to nullify the Agreement. The ordinances required under the Agreement and passed in December, were repealed in February. Also, the January approval by the Department of the amended Act 537 plan, requested by Township, was appealed by Township. In response, the Department sent Township a letter dated March 16, 2006, warning that abandonment of the project by Township would place it in immediate violation of the requirements to provide public sewer and a treatment facility.

On April 21, 2006, the Authority filed the complaint at issue, seeking specific performance of the Agreement, or in the alternative, reimbursement for legal and engineering expenses incurred in regard to the formation and effectuation of the

Agreement.[1] The trial court concluded that the parties entered into a contract on November 15, 2005, that Township failed to perform its obligations pursuant to the contract, and, this failure, was a material breach of the Agreement. The trial court awarded the Authority $23,579.75. This appeal followed, wherein Township argues that the Agreement between the parties is unenforceable.[2]

■ We initially observe that a claim for a breach of contract arises when it can be shown that there was a contract, a breach of a duty imposed by that contract and damages that resulted from the breach. *The General State Authority v. Coleman Cable & Wire Company,* 27 Pa. Cmwlth. 385, 365 A.2d 1347, 1349 (1976).

Here, the essence of the contract was that Township would help fund improvements for the sewage plant operated by the Authority and in exchange, Township residents could hook up to the Authority's system. Township argues, however, that the Agreement was not enforceable because, per the Agreement, approval by the Department was necessary and the Department never issued final approval to the Township's Act 537 plan.

With respect to the Department's approval, the Agreement provides:

1. *APPROVAL GIVEN BY DEP [Department].* The parties acknowledge that they have met with the Pennsylvania Department of Environmental Protection ("DEP") [Department] which has agreed in principal [sic] to ORJMA [Authority] accepting new customers from Pogue, Pine Tree Village and the Southern Huntingdon County High School complex such that Cromwell [Township] will not be required to build its own sewage treatment facility. Cromwell [Township] certifies that it has, pursuant to the requirements of Pennsylvania law, prepared and advertised the necessary Act 537 amendment, which is subject to DEP approval after the public comment period expires.

(R.R. at 15a–16a.)

At the time the Agreement was entered into, the parties acknowledged that the Department had given its tentative approval to the joint project. (R.R. at 15a.) Additionally, in paragraph one of the Agreement, Township certified that it "has pursuant to the requirements of Pennsylvania law, prepared and advertised the necessary Act 537 Plan amendment, which is subject to DEP approval after the public comment period expires." (R.R. at 16a.)

The record reflects that the Department approved the Act 537 plan amendment in a letter sent to Township dated January 19, 2006. Township thereafter filed an appeal of its Act 537 plan amendment. DEP ultimately rescinded its approval and informed Township that it must comply with the original Act 537 plan. According to Township, because there was no Department approval, Township was prevented from going forward with the project as planned.

■ We agree with the Authority, however, that Township sabotaged the project by appealing the Department's approval of its own Act 537 amendment. "In the absence of an express provision, the law will

---

1. The specific performance count of the complaint was not pursued during the trial of the case.

2. This court's review of a verdict following a non-jury trial is limited to determining whether the findings of the trial court are supported by competent evidence and whether the trial court committed an error in the application of the law. *M & D Properties, Inc. v. Borough of Port Vue,* 893 A.2d 858 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 588 Pa. 790, 906 A.2d 1197 (2006).

imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." *Daniel B. Van Campen Corporation v. Building and Construction Trades Council of Philadelphia,* 202 Pa.Super. 118, 195 A.2d 134, 136–137 (1963). Township cannot claim that there was no Department approval, when, in fact, there was tentative approval and it was only rescinded because of Township's appeal.

Next, Township argues that there were material ambiguities which prevented the parties from having a "meeting of the minds" on material terms. Specifically, Township maintains that there were several ambiguities in the Agreement with respect to who is responsible to build the collection system and the number of equivalent dwelling units (EDU's) that should be assessed to the High School complex. However, Township in fact points to differences between the Agreement and the Act 537 plan and not to ambiguities actually in the Agreement. There is no ambiguity in the Agreement itself with respect to the number of EDU's or with respect to who is to construct the collection system.

Specifically, the Agreement, without ambiguity, provides that the Authority would be responsible for building the collection system in Township. (R.R. at 17a.) The Agreement is also not ambiguous in stating that the collection system for Pogue, Pine Tree Village and the Southern Huntingdon County High School Complex will create no less than 99 EDU's. (R.R. at 19a.)

Next, Township claims that the Agreement is unenforceable because it did not receive approval from the trial court as required by Section 2513 of The Second Class Township Code (Code), Act of May 1, 1933, P.L. 103, *as amended,* added by the Act of November 9, 1995, 53 P.S. § 67513. According to Township, there was a mutual mistake of fact, since neither party was aware that the trial court's approval was necessary and, therefore, the contract is unenforceable.

Section 2513 of the Code provides in its entirety:

(a) Any township may by agreement connect with an existing sanitary sewer owned by any municipal corporation or municipal authority for either sewage collection or treatment purposes.

(b) When any township desires to connect with the existing sewer of any municipal corporation or municipality authority, a petition shall be presented by the board of supervisors to the court of common pleas setting forth the facts. The court shall fix a day for hearing upon the petition and direct public notice be given to all interested parties. If the court is of the opinion that the connection can be made without impairing the usefulness of the existing sanitary sewer system, it shall appoint three viewers to view the premises, investigate the facts of the case, assess the necessary costs and expenses of making the connection and the proportionate part of the expense of building the original sanitary sewer system upon the township, determine the proportion of the expense for repairs which the municipal corporation or municipal authority and the township shall bear and determine all other questions liable to arise in connection therewith.

In accordance with the above, even though there was an agreement for services between the Authority and Township as referenced in (a), Township argues that trial

court approval was still necessitated by (b).

The Authority responds that approval of the trial court is only necessitated when no agreement between the parties has been reached, such as when a municipal corporation or authority who would receive the flows from a township, has not agreed to receive the flows. As there was an agreement between the Authority and Township, no court approval was necessary.

In support of its argument, the Authority relies on *East Caln Township v. Borough of Downingtown*, 40 Pa. D. & C.2d 405 (1966). In that case, the township filed a petition seeking approval from the trial court to connect its proposed sewage lines to a borough's existing sewage system. In discussing that case, the trial court stated that the township "having reached no agreement with the adjacent borough for connecting its proposed sewer lines with Downingtown's [borough's] existing sewer system, [township] filed its petition . . . setting forth the facts and asking the court to determine that such connection can be made 'without impairing the usefulness of the existing sewer'. . . ." *Id.* at 406.[3]

A fair reading of Section 2513 of the Code authorizes a township, by agreement, to connect with an existing sanitary sewer owned by a municipal corporation or authority. It is only when no agreement has been reached between the township and a municipal corporation or authority that trial court approval is necessary.

■ Finally, Township argues that the Authority should not have been awarded damages, because the Authority would have incurred the alleged costs whether or not there was a contract between Township and the Authority and because the Authority failed to mitigate its damages.

■ As to mitigation of damages, a general proposition of contract law is that a party who suffers a loss due to a breach of contract has a duty to make a reasonable effort to mitigate his losses. *Bafile v. Borough of Muncy*, 527 Pa. 25, 588 A.2d 462 (1991). Here, Township claims that the Authority knew that the composition of the Township supervisors was going to change, that the newly elected supervisors were not in favor of the Agreement, yet the Authority rushed into the Agreement. Township in essence, is arguing that the Authority should have anticipated a breach by Township and then should have ceased performing its obligations. It is not until a breach of contract occurs, however, that a party is required to mitigate damages.

Also, the damages awarded to the Authority are consistent with engineering and legal fees which the Authority absorbed as a result of the failed project with Township. Township nonetheless argues, in essence, that the Authority should not have proceeded to incur expenses, because there was much uncertainty as to the joint project. Here, however, the Authority acted in good faith in pursuing its obligations under the Agreement which was entered into on November 15, 2005. Township breached the Agreement in early 2006 and the suit at issue was then filed in April of 2006.

In accordance with the above, the decision of the trial court is affirmed.

***ORDER***

Now, July 23, 2009, the order of the Court of Common Pleas of Huntingdon

---

**3.** *East Caln Township* involved the predecessor to Section 2513 of the Code, Section 1530, 53 P.S. § 66530.

County, in the above-captioned matter, is affirmed.