J-S45027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TAREN LAMAR WEEDON | : | No. 1836 MDA 2017 |

Appeal from the Order Entered October 30, 2017
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0000330-2017

BEFORE:   PANELLA, J., OTT, J., and PLATT*, J.

MEMORANDUM BY OTT, J.:                      **FILED SEPTEMBER 21, 2018**

The Commonwealth appeals from the order entered October 30, 2017, in the Dauphin County Court of Common Pleas granting a pretrial motion to suppress evidence filed by Taren Lamar Weedon.[1]  On appeal, the Commonwealth argues the trial court erred in granting Weedon's suppression motion when (1) Weedon did not possess a reasonable expectation of privacy in the vehicle searched, and/or (2) the police possessed probable cause to search the vehicle.  For the reasons below, we affirm.

The facts underlying Weedon's arrest, as developed during the suppression hearing, are as follows.  On November 28, 2016, at approximately

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Pursuant to Pa.R.Crim.P. 311(d), the Commonwealth properly certified in its notice of appeal that "the order in question will terminate or substantially handicap the prosecution in the above-captioned matter."  Notice of Appeal, 11/29/2017.

8:35 p.m., Pennbrook Police Officer Brant Maley was on routine patrol in a marked vehicle when he observed a blue Buick sedan with "dark window tinting on the side and rear windows." N.T., 8/1/2017, at 11. Officer Maley positioned his patrol vehicle behind the Buick, and as the Buick started to pull over to park, Officer Maley activated his emergency lights. When the officer approached the vehicle, he encountered Weedon in the driver's seat with "his hands up, kind of like in a surrender position in front of … [] the steering wheel[.]" *Id.* at 12. Officer Maley informed Weedon he stopped the car for the window tint, and requested Weedon provide his driver's license. Weedon readily admitted his driver's license was suspended, and he was on state parole for "drugs." *Id.* at 14. He provided the name of his parole agent, as well as the registration and insurance card for the vehicle, which was registered to Bobbi Jo Brannon. While speaking to Weedon, the officer observed "multiple air fresheners in the vehicle and that [] Weedon had two cell phones on his lap." *Id.* at 15-16. Officer Maley explained that, in his experience, the presence of masking agents (such as air fresheners), multiple cell phones and tinted windows were indicative of a defendant engaged in drug sales. *See id.* at 22-24.

Officer Maley contacted Weedon's parole agent, who asked him to call another agent because she was at home. The officer then called Agent George Mann who stated he was nearby, and would stop by to talk to Weedon. Neither agent instructed the officer to detain Weedon. *See id.* at 33.

Officer Maley was finishing Weedon's paperwork when Agent Mann arrived. The officer stated he told Agent Mann "the only thing I really observed that was odd, just to me, is there were two cell phones on his lap when I was up talking to him." *Id.* at 34. There is no indication in the record that Officer Maley told Agent Mann about the multiple air fresheners in the car. Officer Maley then returned to the Buick, and advised Weedon he was receiving a citation for driving under suspension.[2] After explaining to him how to respond to the citation, Officer Maley told Weedon "he was free to go." *Id.* at 36. In the meantime, Brannon, the owner of the Buick arrived. Officer Maley recalled that at some point, Brannon told him she gave Weedon "permission to use the car." *Id.*

After Officer Maley issued the citation and told Weedon he was free to leave, Agent Mann engaged Weedon in conversation. *See id.* at 37. Agent Mann testified he did not know Weedon before that night, and the only information he had was (1) Weedon was stopped for having tinted windows, (2) his license was suspended, and (3) he had two cell phones in his possession. *See id.* at 69-73. He described their encounter as follows:

> I identified myself: tell him George Mann, State Parole. [His agent] contacted me. I am talking to him. He is gathering himself and his stuff.
>
> I opened the door and say, "Hey, can you get out of the vehicle? Put your hands up on the roof." I asked him if he had anything on his person what would hurt me or himself. He said no. I go through, pull things out of his pockets.

---

[2] *See* 75 Pa.C.S. § 1543.

*Id.* at 76. Agent Mann recovered $2,100 in cash from Weedon's jacket pocket. Weedon told him the money was for a car he purchased from a business on Paxton Street. He explained the "guy bought the car in auto auction for him [and h]e was going to pay for it." *Id.* Agent Mann was suspicious of Weedon's story, especially after Weedon admitted his janitorial job paid little more than minimum wage. The agent continued to check Weedon's pockets and found some "loose cash in his jeans pocket." *Id.* at 77. Agent Mann described what happened next:

> I started looking in the car. I asked if he had anything in the car. He said no. **I opened up the center console** of the car between the front driver and passenger seat. There was a digital scale in there and some loose cash. At that time, took that out, set that on the roof of the car. I asked Officer Maley if he could come over and help me search the rest of the car.
>
> Went into the back seat – Officer Maley was on the passenger side, I was on the driver's side – and found what looked like a backpack type bag, duffel bag, sitting behind the passenger's seat. Officer Maley opened it up, and there was a gun inside.

*Id.* at 77-78 (emphasis supplied). Under cross-examination, Agent Mann admitted he had no "reasonable suspicion" to believe Weedon had contraband on his person before he searched his pockets. *Id.* at 87. He also acknowledged he did not seek either Weedon's or Brannon's consent before searching the car. *See id.* at 88-89. Indeed, Brannon testified at the suppression hearing that: (1) she gave Weedon permission to drive her car, (2) she did not know his license was suspended, and (3) she did not give either the police officer or parole agent permission to search her car.

Weedon was subsequently charged with persons not to possess firearms, carrying a firearm without a license, receiving stolen property, possession of drug paraphernalia, driving under suspension, and unlawful activities (tinted windows).[3] On May 23, 2017, Weedon filed a pretrial motion to suppress the evidence recovered during the car stop. The trial court conducted a suppression hearing on August 1, 2017. At the conclusion of the hearing, the trial court directed both parties to submit their arguments in writing. Thereafter, on October 30, 2017, the trial court entered an order granting Weedon's motion to suppress. This timely Commonwealth appeal followed.

Our standard of review of an order granting a defendant's motion to suppress evidence is well-settled:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. ***Commonwealth v. Miller***, 2012 PA Super 251, 56 A.3d 1276, 1278–79 (Pa. Super. 2012) (citations omitted). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression

---

[3] ***See*** 18 Pa.C.S. §§ 6105, 6106, and 3925, 35 P.S. § 780-113(a)(32), and 75 Pa.C.S. §§ 1643 and 4107(b)(2), respectively.

- 5 -

court's legal conclusions." ***Commonwealth v. Brown***, 606 Pa. 198, 996 A.2d 473, 476 (2010) (citation omitted).

***Commonwealth v. Korn***, 139 A.3d 249, 252–253 (Pa. Super. 2016), appeal denied, 639 Pa. 157, 159 A.3d 933 (2016). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted), appeal denied, 577 Pa. 701, 847 A.2d 58 (2004). Nevertheless, the suppression court's conclusions of law are not binding on an appellate court, and are subject to plenary review. ***Commonwealth v. Johnson***, 969 A.2d 565, 567 (Pa. Super. 2009) (citations omitted).

***Commonwealth v. Byrd***, 185 A.3d 1015, 1019 (Pa. Super. 2018). When a defendant files a motion to suppress evidence, "it is the Commonwealth's burden to present evidence that the defendant's constitutional rights were not infringed." ***Commonwealth v. Enimpah***, 106 A.3d 695, 701 (Pa. 2014). ***See also*** Pa.R.Crim.P. 581, Comment (noting the burden of production and persuasion is on the Commonwealth).

The Commonwealth first contends the trial court erred in rejecting its argument that Weedon "lacked a reasonable expectation of privacy in Brannon's vehicle." Commonwealth's Brief at 9. Relying on ***Commonwealth v. Maldonado***, 14 A.3d 907 (Pa. Super. 2011), the Commonwealth insists Weedon's purported expectation of privacy was unreasonable because he was "not authorized to drive the vehicle," despite the fact Brannon gave him permission to drive her car. ***Id.*** It maintains that, "[u]nder the Motor Vehicle Code, vehicle owners are specifically prohibited from authorizing an unlicensed driver to drive the owner's vehicle." ***Id.*** at 9-10, *citing* 75 Pa.C.S. § 1547(a).

Consequently, the Commonwealth argues: "Because Weedon's license was suspended, any 'authorization' or 'permission' that Brannon gave Weedon was invalid as a matter of law because she was specifically prohibited from doing so by statute." *Id.* at 10.

When a defendant files a suppression motion, he has "the preliminary burden of establishing standing and a legitimate expectation of privacy." *Commonwealth v. Burton*, 978 A.2d 428, 435 (Pa. Super. 2009) (*en banc*), (quotation omitted).

> [G]enerally under Pennsylvania law, a defendant charged with a possessory offense has automatic standing to challenge a search. "However, in order to prevail, the defendant, as a preliminary matter, must show that he had a privacy interest in the area searched."
>
> An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

*Id.* (citation omitted).

Weedon contends, and the trial court agrees, the facts in *Maldonado* are distinguishable from those herein, and that Weedon had a reasonable expectation of privacy in the Buick despite his lack of a valid driver's license. We agree.

In *Maldonado*, *supra*, a police officer stopped the vehicle the defendant was driving because it had an expired registration sticker. After

speaking with the defendant, the officer learned (1) the defendant did not have a valid driver's license or proof of insurance, (2) the car was registered to a woman named Jacqueline Vasquez, and (3) the defendant had several outstanding scofflaw warrants. Therefore, he placed the defendant in his patrol car while he decided whether or not to arrest him. *See Maldonado*, *supra*, 14 A.3d at 909.

Because the defendant did not have a valid license and the car had an expired registration, the officer decided to impound the car. While waiting for a tow truck to arrive, he conducted an inventory search of the vehicle's content. Upon searching the trunk, the officer discovered, *inter alia*, a black satchel. In an exterior open pocket, the officer observed plastic bags containing a white powder and a spoon with white powder residue. When he removed the satchel from the trunk, it seemed unusually heavy. The officer then looked inside the bag, and observed a digital scale, numerous baggies, a box of ammunition, and a firearm. He subsequently placed the defendant under arrest for drug and gun crimes. *See id.*

The defendant filed a pretrial motion to suppress, which the trial court granted. The Commonwealth appealed, arguing the defendant "failed to establish he had a reasonable expectation of privacy in the vehicle." *Id.* at 910. A panel of this Court agreed. With regard to the defendant's purported expectation of privacy, the panel opined:

> [T]he deficit of evidence drives our determination in the present appeal. At the suppression hearing, Maldonado bore the burden of establishing that he had a reasonable expectation of privacy in

the automobile. At the suppression hearing, the Commonwealth presented only the testimony of Officer Buckman, and Maldonado did not present any witnesses. The evidence elicited at that time establishes that the vehicle was owned by Vasquez. Officer Buckland testified, on cross-examination, that Maldonado told him that Vasquez was his girlfriend and that they lived together at the address to which the vehicle was registered. However, there was no evidence that Maldonado had permission from Vasquez to drive the car. When Maldonado's counsel asked Officer Buckman whether Maldonado told him that Vasquez had given him permission to drive her car, Officer Buckman stated only that he did not recall asking Maldonado that question. Of note, although it appears that Vasquez attended the suppression hearing, Maldonado did not call her to testify that she had given Maldonado permission to drive her car on the day in question.[4]

_____

   [4] We reject Maldonado's assertion that Vasquez's presence at the suppression hearing "inidcat[es] her consent to [Maldonado] driving her car." We know of no authority that would allow us to draw such an inference based solely on her presence, and Maldonado provides none.

_____

The fact that Maldonado and Vasquez might have lived together and had a romantic relationship does not foreclose the possibility that Maldonado was driving Vasquez's vehicle without her knowledge or permission. For that reason, we conclude that **Maldonado failed to establish an expectation of privacy in the vehicle he was driving, which "he did not own, that was not registered to him, and for which he has not shown authority to operate**."

*Id.* at 911-912 (internal citations and one footnote omitted; emphasis supplied). Therefore, under the facts of that case, the defendant never established the owner of the vehicle, Vasquez, gave him permission to drive the car at the time he was stopped. Significantly, in its analysis, the *Maldonado* Court did not mention the fact that the defendant had no valid driver's license.

An *en banc* panel of this Court reached the same conclusion in ***Burton***, ***supra***. In that case, a police officer stopped the vehicle the defendant was driving because it lacked a registration sticker. After running a computer check of the defendant's identification, the officer discovered the defendant was not a licensed driver, had an outstanding scofflaw warrant, and did not own the vehicle. Consequently, the officer arrested the defendant on the outstanding warrant and arranged to tow the vehicle. Before doing so, the officer conducted an inventory search of the car, at which time he observed a jacket in the trunk. After the defendant acknowledged the jacket was his, the officer checked it before returning it to the defendant. At that time, he found drugs hidden in a baseball cap stuffed in the sleeve. ***See Burton***, ***supra***, 973 A.2d at 434. The trial court subsequently denied the defendant's pretrial suppression motion.

On appeal, an *en banc* panel of this Court affirmed the ruling, finding the defendant failed to demonstrate a reasonable expectation of privacy in the vehicle. ***See id.*** at 435. The ***Burton*** Court opined:

> In the instant case, the vehicle was not owned by [the defendant]. The vehicle was not registered in [the defendant's] name. [The defendant] offered no evidence that he was using the vehicle with the authorization or permission of the registered owner. [The defendant] offered no evidence to explain his connection to the vehicle or his connection to the registered owner of the vehicle. [The defendant] failed to demonstrate that he had a reasonably cognizable expectation of privacy in a vehicle that he did not own, that was not registered to him, and for which he has not shown authority to operate.

*Id.* at 436. Again, the panel did not even mention the fact that the defendant was an unlicensed driver. Therefore, one can reasonably infer that whether a defendant has a valid driver's license is not a determinative factor when considering whether the defendant has a reasonable expectation of privacy in the vehicle he is driving.

Here, the trial court explained its ruling as follows:

> Just like the case herein, **Maldonado** did not have a valid driver's license. Unlike **Maldonado**, the owner herein testified that she was not only present during the traffic stop, but also had previously given permission to the defendant to have the car. Also unlike **Maldonado**, the vehicle herein was legally parked and the owner obtained possession.
>
> [The] Commonwealth argues that an owner cannot grant authorization to drive their vehicle to an unlicensed individual. While this is true, **Maldonado** stands for the proposition that it is not "authorization" but merely "permission" that is required. **Burton** notes that either authorization OR permission needs to be established. That permission was established at the scene as well as testified to at the suppression hearing.

Trial Court Order, 10/30/2017, at 3.

We agree with the trial court's analysis. The Commonwealth provides no support for its claim that a person who does not possess a valid driver's license can never demonstrate a reasonable expectation of privacy in a vehicle that he is driving. Indeed, if, in fact, Weedon had been stopped driving his own car – albeit unlicensed – there would be no dispute that he had a reasonable expectation of privacy in that vehicle. Brannon told the officer at the scene and testified at the suppression hearing that she gave Weedon permission to drive her car. Accordingly, we agree with the trial court that

Weedon demonstrated a reasonable expectation of privacy in the vehicle searched.[4] *See Commonwealth v. Dugan*, 855 A.2d 103 (Pa. Super. 2004) (finding trial counsel was ineffective for failing to object to defendant's statement to police that they should obtain a warrant before searching borrowed truck he was driving; this Court found that although defendant's license was suspended, he had a reasonable expectation of privacy in the truck borrowed from a friend).  Accordingly, the Commonwealth's first issue fails.

Next, the Commonwealth asserts that, even if Weedon had a reasonable expectation of privacy in the vehicle, "law enforcement" had probable cause to search the vehicle.  Commonwealth's Brief at 12.  It summarizes:

> The traffic stop occurred at night and Weedon was driving with tinted windows and was on parole for drug deliveries.  There were multiple masking agents in the vehicle and Weedon possessed two cell phones, which is indicative of drug dealing.  Weedon put his hands in the air when he was pulled over, which is indicative of

_____

[4] Moreover, even if we accepted the Commonwealth's premise that Brannon could not give Weedon permission to drive her car based upon Section 1574(a) of the Motor Vehicle Code, our decision would remain the same.  Section 1547(a) provides, in relevant part:

> No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this chapter or who is not licensed for the type or class of vehicle to be driven.

75 Pa.C.S. § 1574(a).  However, this Court has held that "[i]n order to violate the statute, … it must be shown that the owner knew or had reason to know that the individual to whom he or she authorized to operate his or her vehicle did not have a valid driver's license." *Ferry v. Fisher*, 709 A.2d 399, 403 (Pa. Super. 1998) (emphasis omitted).  Here, Brannon testified she was not aware Weedon's license had been suspended. *See* N.T., 8/1/2017, at 98.  Therefore, Section 1574(a) is inapplicable.

consciousness of wrongdoing. Agent Mann conducted a parole search of Weedon and discovered $2,100 in cash. Weedon's minimum wage employment as a janitor was not the source of the money and Weedon gave inconsistent answers as to the money's source. Based on the above factors, law enforcement possessed probable cause that a search of the vehicle would reveal evidence of drug dealing.

*Id.*

The trial court did not address this claim in its opinion. In fact, the court stated: "[The] Commonwealth's legal basis **does not defend the warrantless search of the vehicle**, but instead contends that the defendant lacked the requisite expectation of privacy." Trial Court Order, 10/30/2017, at 1 (emphasis supplied).

Our review of the certified record, and particularly the Commonwealth's memorandum filed after the suppression hearing, reveals this claim is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). In his post-hearing brief, Weedon argued Agent Mann's search of both his person and the vehicle was not supported by reasonable suspicion that he committed a parole violation, or might possess contraband or evidence of a violation. *See* Brief in Support of Defendant's Omnibus Pre-Trial Motion, 8/7/2017, at 3-5. However, in its post-hearing filing, the Commonwealth asserted only that Weedon did not "have a reasonable expectation of privacy in Bobbi Jo Brannon's vehicle[.]" Commonwealth's Memorandum in Opposition to Defendant's Motion to Suppress, 8/7/2007, at 1. The Commonwealth did not argue Agent Mann possessed reasonable suspicion to search either Weedon and/or the vehicle,

nor did it later seek to amend its memorandum. Accordingly, we find this issue waived.[5]

      Order affirmed.

      Judge Panella joins this decision.

      Judge Platt concurs in the result.

_____

[5] We note that, even if this claim were not waived, we would conclude the Commonwealth is entitled to no relief. Here, Officer Maley issued Weedon a citation and informed him he was free to leave. Therefore, the Commonwealth had to demonstrate Agent Mann had the requisite authority to conduct the warrantless search. A parole agent's authority to conduct a warrantless search of a parolee's person or property is derived from 61 Pa.C.S. § 6153. The statute authorizes an agent to conduct a personal search of a parolee if, *inter alia*, "there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision[.]" 61 Pa.C.S. § 6153(d)(1)(i). Similarly, an agent is authorized to conduct a property search if "there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." ***Id.*** at § 6153(d)(2).

      Here, Agent Mann admitted during the suppression hearing that when he searched Weedon, he had "no reason to believe" Weedon had "any contraband on him." N.T., 8/1/2017, at 87. Indeed, at that time, all Agent Mann knew is that Weedon had been stopped for a tint violation, and was driving with a suspended license and in possession of two cell phones. Weedon was not under arrest, and Officer Maley had already told him he was free to leave. Accordingly, even if the issue were not waived, we would find Agent Mann's warrantless search of Weedon was unauthorized by statute. It follows the subsequent search of the vehicle was also not supported by reasonable suspicion.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>09/21/2018</u>