J-S51011-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PA'RON SHABAZZ RICE | : | |
| | : | |
| Appellant | : | No. 1244 MDA 2019 |

Appeal from the Judgment of Sentence Entered June 28, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004701-2016

BEFORE:  MURRAY, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED:  JANUARY 21, 2021**

Pa'Ron Shabazz Rice (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of possession of a firearm and fleeing and eluding.[1]  We affirm.

The suppression court described the events leading to Appellant's arrest as follows:

> [York City Police] Officer [Jeremy] Fultz testified that he was on duty, in uniform, and driving a marked police cruiser at approximately 2:10 p.m., April 13, 2016.  The officer heard a radio transmission stating that an anonymous caller had reported to police that a red Nissan Maxima bearing Florida license plates containing [Appellant] and two other named individuals was traveling in the area of Philadelphia and Queen Streets.  The caller further stated that the individuals traveling in the car were in possession of a firearm.  Officer Fultz recalled an earlier intra-departmental email that communicated that detectives wanted to question [Appellant] about the homicide of Wayne Weedon Jr. that

---

[1] 18 Pa.C.S.A. §§ 6105 and 3733(a), respectively.

had occurred four days earlier. Officer Fultz knew from prior encounters with [Appellant] that he was a previously-convicted felon who could not lawfully possess a firearm. The officer also knew that [Appellant] was under 21 years of age and that this, too, prevented him from lawfully possessing a firearm. In addition, Officer Fultz was familiar with at least one of the other occupants of the car whom he also knew was a previously-convicted felon who could not lawfully possess a firearm.

The anonymous caller had also communicated that the car was traveling towards the "Southend." Based on his over nine years' experience as a York City Police Officer, Officer Fultz believed "Southend" was a reference to the 500 block of South Duke Street, a location south of Queen and Philadelphia, which is known as the territory of the criminal Southside Gang and is commonly referred to as the "Southend". Officer Fultz traveled to that location but did not locate the described vehicle.

Officer Fultz then traveled to the area of 218 Kurtz Avenue, a location that is several blocks from the 500 block of South Duke Street where Officer Fultz knew [Appellant] resided. In the alleyway behind 218 Kurtz Avenue, Officer Fultz spotted a red Nissan Altima with Florida plates. He could see the vehicle contained four individuals but was not close enough to identify the individuals.

Maintaining a distance of approximately two blocks, Officer Fultz followed the vehicle as it traveled over George and Duke Streets and eventually stopped outside 342 E. Cottage Street. He observed that the driver of the vehicle obeyed traffic laws. While this was occurring, Officer Fultz requested and received authorization from his supervisors to conduct a vehicle pursuit, if such action became necessary.

The officer noted that after the vehicle pulled over, its occupants opened car doors but then closed the doors and remained inside as the vehicle accelerated quickly. Believing the occupants had seen his police cruiser, the officer activated his lights and siren in an effort to stop the car. A high-speed chase through the eastern part of York as well as into neighboring Springettsbury Township ensued during which Officer Fultz observed the red Nissan Altima fail to stop for numerous stop signs and travel at speeds of 60 miles per hour and more in residential neighborhoods with posted speed limits of 25 miles per hour.

Officer Fultz lost sight of the vehicle in the area of Suburban High School on Hollywood Drive.

[York City Police] Officer [Steven] Aderhold testified that he was one of many local and state law enforcement agents who joined in the pursuit of the red Nissan Altima with Florida tags. He lost sight of the vehicle in the area of the Queensgate Shopping Center, which is within several blocks of Suburban High School. The vehicle was located a short time later, abandoned in an apartment complex adjacent to the shopping center. A contemporaneous canine search of the area resulted in the recovery of a partially torn bag that was found 300 to 400 feet from the abandoned car. Located in and around the bag were scales typically used by drug traffickers, a large quantity of heroin, and a loaded firearm.

Officer Andrew Reidy, an eight-year veteran of the York City Police Department and the affiant on the affidavit of probable cause supporting the arrest warrant in this case, testified that the red Nissan Altima with Florida tags was a rental vehicle rented to [Appellant's] aunt, Sherrell Reynolds. He further testified that [Appellant] is a convicted felon and under state and federal law is prohibited from possessing a firearm.

Officer Riedy further related that on May 2, 2016, York City Detective Division received a call from an official at a state correctional institution regarding a taped telephone conversation between an inmate at York County Prison and an individual who was referred to as "Pay." The number called by the inmate was a number that prison records identified as belonging to [Appellant]. The taped conversation occurred three days after the above-described events. In the taped conversation, "Pay" referred to being involved in a chase with York City Police, abandoning a car, and taking a "big loss." In that same conversation and using street terminology, "Pay" described losing $6,000 to $7,000 worth of drugs and two firearms.[3]

> [3] "Pay's" voice in the tape-recorded jail conversation was later identified as that of [Appellant] by his parole officer. The voice identification procedure was initially challenged in [Appellant's] written pre-trial motion. At the time of the pre-trial hearing, however, [Appellant] withdrew the challenge.

- 3 -

Suppression Court Opinion, 11/16/16, at 2-6.

The police obtained an arrest warrant for Appellant on May 5, 2016. They were initially unable to locate him, and did not arrest him until June 14, 2016. On September 19, 2016, Appellant filed an omnibus pre-trial motion seeking to suppress the contraband seized at the scene near the abandoned Nissan Altima. The suppression court held a hearing on October 24, 2016. On November 16, 2016, it denied Appellant's motion to suppress. However, the Commonwealth did not receive the order until November 28, 2016, two days before the end of the November trial term. There was no December trial term.

On September 5, 2017, Appellant filed a motion to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 600. The trial court held a hearing on September 11 and 18, 2017. At issue were four periods of time: (1) the 40-day period from May 5 to June 14, 2016, which was the period between the issuance of the arrest warrant and the date the police arrested Appellant; (2) a 16-day period between June 28, and July 14, 2016, after the magisterial district judge *sua sponte* continued the preliminary hearing; (3) a 7-day period between July 10, and July 17, 2017, when the affiant was unavailable because of personal issues; and (4) the 106-day period from the date Appellant filed his motion to suppress to the first day of the next trial term. On September 18, 2017, the trial court denied Appellant's motion to dismiss.

A jury trial took place from May 6 through 9, 2019. The jury found Appellant guilty of the above crimes, and the trial court subsequently sentenced him to an aggregate term of 5½ to 11 years' imprisonment. On July 25, 2019, Appellant timely appealed to this Court.[2]

Appellant presents two questions for our review:

I.      Whether the trial court abused its discretion and/or committed reversible error by denying [Appellant's] motion to dismiss pursuant to Rule 600 and therefore denying [Appellant's] right to a speedy trial by improperly computing excludable time and/or finding that the Commonwealth exercised due diligence in its pursuit or prosecution of [Appellant?]

II.     Whether the suppression court abused its discretion and/or committed reversible error by denying Appellant's motion to suppress evidence when the initial stop was illegal lacking a reasonable suspicion of criminal activity, Appellant was forced to abandon property which was the fruit of the illegal stop, and when Appellant possessed a reasonable expectation of privacy as an occupant and/or possessor of the vehicle?

Appellant's Brief at 5 (unnecessary capitalization omitted).

In his first issue, Appellant challenges the trial court's denial of his speedy trial motion. *Id.* at 19-35. Our standard of review is as follows:

> This Court reviews a ruling under Rule 600 pursuant to an abuse-of-discretion standard. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law. Additionally, when considering a Rule 600 claim, this Court must view the record facts in the light most

_____

[2] Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

favorable to the winner of the Rule 600 motion. It is, of course, an appellant's burden to persuade us the trial court erred and relief is due.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of [a] crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth. So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

***Commonwealth v. Martz***, 232 A.3d 801, 809-10 (Pa. Super. 2020)

(citations and ellipses omitted).

Rule 600 provides in pertinent part:

(A) Commencement of Trial; Time for Trial

...

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

...

(C) Computation of Time

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600(A), (C).

To summarize, the courts of this Commonwealth employ three steps in determining whether Rule 600 requires dismissal of charges against a defendant. First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.

*Commonwealth v. Bethea*, 185 A.3d 364, 371 (Pa. Super. 2018) (citation, emphasis, and ellipses omitted), *appeal denied*, 219 A.3d 597 (Pa. 2019).

"Excludable time" is classified as periods of delay caused by the defendant. Pa.R.Crim.P. 600(C)(2). "Excusable delay" occurs where the delay is caused by circumstances beyond the Commonwealth's control and despite its due diligence. Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth.

*Commonwealth v. Moore*, 214 A.3d 244, 248-49 (Pa. Super. 2019) (case citations and quotation marks omitted), *appeal denied*, 224 A.3d 360 (Pa. 2020).

A defendant is not automatically entitled to discharge under Rule 600 where, as here, trial starts more than 365 days after the filing of the complaint. *Id.* at 248. Rather,

Rule 600 encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of

- 7 -

diligence. Any such period of delay results in an extension of the run date. Addition of any Rule 600 extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

**Bethea**, 185 A.3d at 371 (citation and brackets omitted). "In assessing a Rule 600 claim, the court must exclude from the time for commencement of trial any periods during which the defendant was unavailable[.]" **Commonwealth v. Hunt**, 858 A.2d 1234, 1241 (Pa. Super. 2004) (*en banc*).

Our review discloses that the trial court's rationale is supported by the record and the law. The mechanical run date was May 5, 2017. Appellant concedes that the period from June 7, 2016, when the Commonwealth formally declared Appellant a fugitive, and June 14, 2016, when police arrested him, is excludable. Appellant's Brie, at 25. Thus, the adjusted run date is May 12, 2017.

Inexplicably, on appeal, Appellant challenges the trial court's findings that the periods between the original date of the preliminary hearing, June 28, 2016, and the rescheduled date, July 14, 2016; and the period between July 10, and July 17, 2017, when the affiant was unavailable because he was on family medical leave, were excusable. The record shows that Appellant agreed these periods were excusable. **See** N.T., 9/18/17, at 35 (discussion at speedy trial hearing regarding 16-day preliminary hearing continuance period; defense counsel stating, "We already had judicial delay on our paper for that timeframe." Trial court responding, "sixteen days?" Defense counsel

- 8 -

agreeing, "That's correct."); *see also id.* at 59-60 (discussion regarding unavailability of affiant, defense counsel stating, "Well, I think for the July 10th, 2017 date where the officer was not available, that week may be excusable by the Commonwealth.")

Our courts have held, "[a] new and different theory of relief may not be successfully advanced for the first time on appeal." *Commonwealth v. Santiago*, 980 A.2d 659, 666 (Pa. Super. 2009) (citations omitted); *Commonwealth v. Cain*, 906 A.2d 1242, 1244 (Pa. Super. 2006) (speedy trial issue waived on appeal when not properly presented to trial court); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"). Because Appellant conceded below these periods were excusable, we will not address them further, and the 23 day total to the adjusted run date, making it June 4, 2017.

The next period at issue is the 33-day period from May 5 to June 6, 2016; this is the period from the date of the issuance of the arrest warrant until the Commonwealth formally declared Appellant a fugitive. Appellant argues the Commonwealth failed to exercise due diligence in apprehending him because it waited until June 7, 2016 to formally declare him a fugitive. Appellant's Brief at 24. We disagree.

The Commonwealth must show, by a preponderance of the evidence, that it acted with reasonable diligence in attempting to apprehend a criminal defendant. *Commonwealth v. Newman*, 555 A.2d 151, 155 (Pa. Super.

1989). "In determining whether the police acted with due diligence, a balancing process must be employed where the court, using a common sense approach, examines the activities of the police and balances this against the interest of the accused in receiving a fair trial. We have held that, where the Commonwealth exercises due diligence in attempting to locate a defendant prior to arrest, the period of elapsed time between the date of the filing of the complaint and the date of the arrest is excludable[.]" *Id.* "[L]ack of due diligence should not be found simply because other options were available or, in hindsight, would have been more productive." ***Commonwealth v. Ingram***, 591 A.2d 734, 737 (Pa. Super. 1991).

We have explained:

It is not the function of our courts to second-guess the methods used by police to locate accused persons. The analysis to be employed is whether, considering the information available to the police, they have acted with diligence in attempting to locate the accused. Deference must be afforded the police officer's judgment as to which avenues of approach will be fruitful.

***Commonwealth v. Laurie***, 483 A.2d 890, 892 (Pa. Super. 1984). The fact that police officials could have done more, in hindsight, to locate and apprehend an accused individual is not enough to demonstrate a speedy trial violation. Police officers do not have to "exhaust every conceivable method of locating a defendant." *Id.* In sum, courts should not ask what could have been done but, instead, focus on whether the Commonwealth's actual search efforts were sufficient to constitute due diligence. *Id.*

Here, York County Police Officer Andrew Reidy testified at the Rule 600 hearing. He said he checked Appellant's last known address and spoke with people there but could not locate Appellant. N.T., 9/18/17, at 6-7. He also spoke with Appellant's state parole officer to attempt to locate him and placed the warrant into CLEAN/NCIC. *Id.* He then turned the case over to the United States Marshall's task force, which attempted, unsuccessfully, to locate Appellant, and he accompanied the task force on several visits to Appellant's last known address. *Id.* When Officer Reidy's efforts were unsuccessful, he completed the paperwork to formally declare Appellant a fugitive. *Id.* at 7. The trial court found Officer Reidy's testimony credible in determining that the Commonwealth exercised due diligence to locate Appellant. *Id.* at 33-34; Trial Court Opinion, 12/04/19, at 14.

After review, we conclude the trial court correctly held that the Commonwealth exercised due diligence. Appellant's brief and unsupported argument that the police should have formally declared him a fugitive at an earlier date does not change this result. We have held repeatedly that police officers are entitled to deference in selecting the methods they deem to be the most effective in locating a defendant. *See e.g.*, *Laurie*, 483 A.2d at 892. Thus, the trial court properly excluded this 33-day period, and the adjusted run date becomes July 7, 2017.

Appellant last argues that the trial court erred in excluding the 106-day-period from September 19, 2016, when Appellant filed his omnibus pretrial

motion to suppress, to January 3, 2017, the start of the next trial term following the decision on the motion. Appellant argues he was ready and available for trial during the pendency of his motion. Appellant's Brief at 26. We disagree.

The Pennsylvania Supreme Court has held "that delays caused by pretrial motions constitute excludable time where the pretrial motion renders the defendant unavailable." *Commonwealth v. Hill*, 736 A.2d, 578, 585 (Pa. 1999). The Court defined unavailability as follows: "a defendant is . . . unavailable for trial if a delay in the commencement of trial is caused by the filing of the pretrial motion." *Id.* at 587. Clearly, a suppression motion delays the start of trial because a case may be drastically altered or rendered moot by the trial court's ruling on the motion. A case cannot be brought to trial while a suppression motion is pending.[3] Therefore, the time period from September 19, 2016 to November 28, 2016, when the Commonwealth received the decision, was excludable.[4] *See Hill*, at 584 ("Here, the Superior

_____

[3] In her argument on appeal, defense counsel glosses over the fact that the hearing on the motion was delayed because she failed to appear at the initial hearing on October 4, 2016, causing the hearing to be continued until October 24, 2016. *See* N.T. 10/24/16, at 3.

[4] The record reflects the trial court issued its decision on November 16, 2016. However, the docket shows the Prothonotary did not send the decision to the parties until November 23, 2016. There is no explanation on the record for this delay. Further, the Commonwealth was able to demonstrate at the Rule 600 hearing that it did not receive the decision until November 28, 2016. N.T. 9/11/17, at 15-17; 9/18/17, at 39. Given that defense counsel claimed her

Court found that the 441 day period between May 2, 1994 and July 17, 1995 constituted excludable time because Hill had pretrial motions pending throughout that period."). Moreover, the parties agree November 28, 2016, was two days before the end of the November trial term, and York County did not have a December trial term. Thus, the Commonwealth was not responsible for any delay between November 28, 2016, and the first day of the next trial term, January 3, 2017, as that time period was excusable. *See Moore*, 214 A.3d at 248-49. The adjusted run date then becomes October 21, 2016. As the Commonwealth was ready for trial when Appellant filed his Rule 600 motion on September 5, 2016, the trial court did not abuse its discretion in denying his motion. *See Martz*, 232 A.3d at 809-10. Appellant's first issue does not merit relief.

In his second issue, Appellant argues the trial court erred in denying his motion to suppress because: (1) Appellant had a reasonable expectation of privacy; (2) the police lacked reasonable suspicion to stop the motor vehicle; and (3) the contraband seized was fruit of the poisonous tree as the product of a forced abandonment. Appellant's Brief at 35-57. We disagree.

We recognize our standard of review for the denial of a motion to suppress evidence:

---

failure to appear at the first scheduled suppression hearing was because she did not receive the scheduling order, N.T. 10/24/16, at 3, it appears there was a history of both parties not receiving timely notice of court orders.

J-S51011-20

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation omitted). Our review is limited to the suppression hearing record. *In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013). "[I]t is the sole province of the suppression court to weigh the credibility of witnesses," and "the suppression court judge is entitled to believe all, part or none of the evidence presented." *Commonwealth v. Blasioli*, 685 A.2d 151, 157 (Pa. Super. 1996) (quotation and citation omitted).

When a defendant files a suppression motion, he has "the preliminary burden of establishing standing and a legitimate expectation of privacy." *Commonwealth v. Burton*, 978 A.2d 428, 435 (Pa. Super. 2009) (*en banc*) (quotation omitted).[5]

_____

[5] Both parties agreed Appellant had standing because he was charged with possessory offenses. *See* Suppression Court Opinion, 11/16/16, at 2, n.1.

- 14 -

[G]enerally under Pennsylvania law, a defendant charged with a possessory offense has automatic standing to challenge a search. However, in order to prevail, the defendant, as a preliminary matter, must show that he had a privacy interest in the area searched.

An expectation of privacy is present when the individual, **by his conduct**, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

*Id.* (citation omitted, emphasis added).

Here, the evidence at the suppression hearing demonstrated the Nissan Altima vehicle in question was rented by Appellant's aunt, and his name was not on the lease. N.T., 10/24/16, at 46. The evidence at the hearing also showed Appellant acted in a manner that was inconsistent with that of a person who believed he had a reasonable expectation of privacy in the vehicle, since he fled from the police, led them on a high-speed chase, and then abandoned the vehicle, discarding the contraband some 300-400 feet away. *Id.* at 18-19, 21, 33, 38-40, 46-47.

Relying on our decision in *Commonwealth v. Jones*, 874 A.2d 108, 118 (Pa. Super. 2005), the suppression court held Appellant did not have a reasonable expectation of privacy in the vehicle. Suppression Court Opinion, 11/16/16, at 7. In the alternative, the court found, even if Appellant had a reasonable expectation of privacy in the vehicle, the police had reasonable

suspicion for attempting an investigatory stop of the vehicle, and Appellant chose to abandon the contraband. *Id.* at 8-13.

In a decision which post-dates the suppression court's opinion, the United States Supreme Court held, "as a general rule, someone in otherwise lawful possession and control of a rental car has a reasonable expectation of privacy in it even if the rental agreement does not list him or her as an authorized driver." *Byrd v. U.S.*, ––– U.S. ––––, 138 S.Ct. 1518, 1524 (2018). The Supreme Court reasoned that a common-law property interest in the place searched is not always needed for a person to claim a reasonable expectation of privacy. *Id.* Consequently, the lack of authorization to drive a rental car does not obviate an individual's expectation of privacy in the vehicle, as long as the individual is in lawful possession and control over the vehicle. *Id.*

On appeal, Appellant cites both his testimony and the testimony of one of his associates to demonstrate that he exercised lawful possession and control over the vehicle. Appellant's Brief at 54-55. However, the testimony is from trial, not from the suppression hearing. It is well-settled that we cannot consider trial testimony, which was not before the suppression court. *In re L.J.*, 79 A.3d at 1085.

Here, the Commonwealth produced evidence that Appellant's name was not on the rental agreement and his actions were inconsistent with someone who was in lawful possession and control of the vehicle. It was Appellant's

burden to refute this; he did not do so. Accordingly, Appellant failed to establish he had a reasonable expectation of privacy in the vehicle. *See Commonwealth v. Maldonado*, 14 A.3d 907, 911-12 (Pa. Super. 2011) (holding defendant failed to satisfy his burden of establishing a reasonable expectation of privacy in vehicle, where vehicle was owned by his girlfriend and he did not put forth any evidence that his girlfriend gave him permission to drive her vehicle).

Based on the above, we conclude the trial court did not err in denying Appellant's motion to suppress. Because Appellant lacked a reasonable expectation of privacy, we need not address his claims regarding reasonable suspicion and forced abandonment.[6] Appellant's second issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/21/2021

---

[6] Even if we were to address them, Appellant would not prevail. In its opinion, the suppression court clearly and ably explained why the police had sufficient reasonable suspicion to detain the vehicle and why they did not coerce or force Appellant's abandonment of the contraband. Suppression Court Opinion, 11/16/16, at 8-12. Thus, if we were to address the merits of these issues, we would adopt the trial court's reasoning.